[No. B002103. Second Dist., Div. Five. June 19, 1984.]

RON SWANBERG et al., Plaintiffs and Appellants, v.
THOMAS O'MECTIN et al., Defendants and Respondents.

**COUNSEL**

John L. Moriarity, Marc J. Poster and Moriarity, Brown & Hart for Plaintiffs and Appellants.

Paul B. Witmer, Jr., for Defendants and Respondents.

**OPINION**

**STEPHENS, Acting P. J.**—On February 24, 1977, plaintiff Ron Swanberg was seriously injured when the motorcycle he was driving collided in an intersection with an automobile operated by defendant, Debbie Popovich. Plaintiff Swanberg, along with his wife, Paula, filed suit for their personal

injuries and property damage on December 2, 1977.[1] Named as defendants were Popovich as well as Thomas and Priscilla O'Mectin. In their complaint, the Swanbergs alleged that their injuries were proximately caused by defendant Popovich's negligent operation or maintenance of her vehicle. In addition, the complaint alleged that the injury was due to the negligent maintenance of certain shrubs growing from the O'Mectins' land, which obscured defendant Popovich's view of vehicular traffic approaching the intersection.

The case went to trial by jury on November 16, 1982, at which time the court dismissed defendant Popovich from the complaint. In substance, plaintiffs proceeded against the remaining defendants on the theory that pursuant to statutory and common law, defendants, as landowners, were affirmatively obligated to maintain their premises in a reasonably safe condition so as not to endanger users of the adjacent public street.

The evidence adduced at trial established that defendants had not had actual possession of their property since 1966 or 1967, and that successive tenants of the property were responsible for the yard work in accordance with the terms of their leasehold agreements. The defendants themselves never cut any of the shrubbery and although they lived some forty-five minutes from the property, they visited same only two or three times in the three years prior to the collision. Further, defendants never checked to see if the tenants were taking care of the shrubbery or for that matter whether the shrubs were growing out into the street and thus hindering traffic.

In determining the instructions which were to be asked of the jury, the court refused plaintiffs' request for BAJI instructions, No. 8.00 and No. 8.20. These instructions require a lessor to exercise reasonable care to inspect his property for a dangerous condition which may expose other persons to unreasonable risk of harm.[2] ■ Instead, the court determined that the jury should be instructed that defendants could be held liable for a

---

[1] Paula Swanberg alleged a loss of consortium.

[2] In relevant part, BAJI No. 8.00 (1977 revision) states: "The [owner] [occupant] [lessor] of premises is under a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons thereon to an unreasonable risk of harm. A failure to fulfill this duty would be negligence."

In relevant part, BAJI No. 8.20 (1977 revision) states: "[The [owner] [occupant] [lessor] of premises is not liable for an injury suffered by a person on his premises which resulted from a dangerous or defective condition of which the [owner] [occupant] [lessor] had no knowledge, unless the condition existed for such a length of time that if the [owner] [occupant] [lessor] had exercised reasonable care in inspecting the premises he would have discovered the condition in time to remedy it or to give warning before the injury occurred."

dangerous condition on their property causing injury to others outside the land, only if defendant landowner had *actual* knowledge of that condition.[3]

Given the foregoing principles for guidance, the jury rendered a verdict in favor of defendants. Subsequent thereto, a motion by plaintiffs for a new trial was denied which was followed by this appeal.

## DISCUSSION

Plaintiffs contend that the trial court erred in instructing the jury that a lessor must have actual knowledge of the dangerous condition of his property, as a prerequisite to finding the lessor liable for injuries to persons off the property caused by the dangerous condition. Thus, the preeminent issue is whether actual knowledge is essential for landowner/lessor—liability, given the above circumstances. ■ Of secondary but equal concern, is whether a landowner can immunize himself from liability for a known or

---

[3]The actual instructions involving this issue, as settled upon by the court, read:

"In the absence of an agreement to the contrary, a lessor of real property surrenders both possession and control of the land to the lessee, retaining only a reversionary interest; and he has no right to enter without the permission of the lessee. Consequently, it is the general rule that the lessor is under no obligation to anyone to look after the premises or to keep them in repair, and is not responsible, either to persons injured on the land or to those outside of it for conditions which develop or are created by the tenant after possession has been transferred. Neither is he responsible, in general, for the activities which the tenant carries on upon the land after such transfer.

"A landlord is not held liable for injuries from conditions over which he has no control. However, if you find from the evidence that the lessor of the premises has actual knowledge that the tenant has created an unreasonable risk of harm, and if you further find from the evidence that the landlord has such a degree of control over the premises, it fairly may be concluded that he could obviate the unreasonable risk of harm, then the landlord is under a duty to exercise ordinary care to avoid exposing persons that a reasonably prudent person of the same or similar circumstances should have foreseen would be exposed to such risk of harm.

"The landlord is under no duty to inspect the premises for the purpose of discovering the existence of an unreasonable risk of harm created by the tenant and only when the landlord has actual knowledge of an unreasonable risk of harm created by the tenant coupled with the right to have it removed from the premises, does the duty of care arise.

"A lessor of land, subject to a month to month tenancy, is not subject to liability in negligence for bodily harm to others outside the land caused by any dangerous condition upon the land which comes into existence after his lessee takes possession unless:

"1. the lessor has actual knowledge of the condition, and;

"2. he realizes or should realize that the condition poses an unreasonable risk of bodily harm to persons outside the land, and;

"3. he possesses such knowledge at least thirty days prior to the date of the occurrence resulting in bodily harm to another."

The court also instructed the jury that a violation of Los Angeles Municipal Code section 62.200 (prohibiting the obstruction of visibility at a street intersection by shrubbery growing on adjacent property) could be the basis for negligence with the caveat: "You cannot find that any defendant violated this section unless you first find that such defendant had *actual* knowledge of the obstruction."

discoverable hazard on his property, by contracting away said obligation to his lessee or tenant.

■ In California, it has long been the law that a person may be liable for injuries resulting from his failure to use ordinary care in the management of his property. (Civ. Code, § 1714; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 372 [182 Cal.Rptr. 629, 644 P.2d 822].) It makes no difference whether the danger posed by said lack of care manifests itself in the form of a natural as opposed to an artificial condition on the property. (*Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358 [178 Cal.Rptr. 783, 636 P.2d 1121].) ■ Further, a landowner may face liability for injury to another, incurred outside of the former's property (on an adjacent street), if the injury is found to be caused by a traffic obstruction in the form of shrubbery growing from the property. (*Wisher* v. *Fowler* (1970) 7 Cal.App.3d 225 [86 Cal.Rptr. 582].)

■ Although liability might easily be found where the landowner has actual knowledge of the dangerous condition, "[t]he landowner's lack of knowledge of the dangerous condition is not a defense. He has an *affirmative duty* to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must *inspect* them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 592, p. 2860; italics in original.) Accordingly, it would appear that actual knowledge is not an absolute requirement for finding liability here.

Unfortunately, it is not clear whether the above authority applies merely to the owner of property under all circumstances, or solely to an owner in possession. ■ In the matter sub judice, the trial court's disallowance of jury instructions embodying the above tenets of law, was undoubtedly grounded upon a belief that a landowner can exempt himself from said affirmative duty, by leasing his property and therein relinquishing his right to control same. Although we are in accord with the general principle that a party should not be held liable for conditions beyond his control, in this case the evidence strongly suggests that the landowner could have easily controlled his property, and further, that said duty to control is nondelegable.

The authority underlying the court's rejection of the proffered jury instructions is the case of *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504 [118 Cal.Rptr. 741, 81 A.L.R.3d 628]. *Uccello* involved an action against a landlord brought by an invitee who received injuries from a vicious dog kept on the leased premises. The *Uccello* court emphasized that actual, as

opposed to constructive, knowledge was a requisite for finding the landlord liable. The reason for the distinction being rooted to the historical doctrine that a landlord who leases his property, surrenders virtual control of his land to the lessee, absent an agreement to the contrary. (*Uccello, supra,* at pp. 510-511; see also com. a to Rest., Torts, § 355.) Because said loss of control includes the right of a landlord to reenter the property without the lessee's permission, short of abridging the latter's right of quiet enjoyment, amongst other privacy law considerations, the landlord is in no position to reliably determine whether or not a tenant/lessee is harboring a dangerous animal.[4]

In contrast, this case does not involve a "transitory" and "easily-concealed" danger such as an animal with vicious propensities. On the contrary, it involves a portion of the property easily viewed from the outside of same. In fact, it was so easily viewed, as alleged, that it may have constituted a menace to persons off the land on the adjacent street. For this reason, we find *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d 504, inapplicable to the instant case.

Aside from the inapplicability of *Uccello,* it would appear that the O'Mectins' duty to care for their property, so as to reasonably avoid injury to others, outside the perimeters of their land, was nondelegable.

At the outset, the parties pose a seeming incongruity in the law, as applied to the respective duties of a landlord and tenant, where maintenance of leasehold property is required by statute. On the one hand, it is said that "Since the property owner is initially under the duty to comply with all laws and orders, he, as lessor, remains subject to that duty *unless it is assumed by the lessee.*" (*Glenn R. Sewell Sheet Metal, Inc.* v. *Loverde* (1969) 70 Cal.2d 666, 672 [75 Cal.Rptr. 889, 451 P.2d 721]; italics added.)[5] On the

---

[4]Plaintiff notes that ". . . even a careful inspection of the premises may not disclose the animal, which could be elsewhere at the time, or, if the animal is disclosed, it may not be obvious that the animal is dangerous."

[5]That court suggested that a lessee might assume responsibility for compliance with laws and orders by virtue of the leasing arrangement itself. Thus, the lessee affirmatively undertakes to satisfy legally required activities " . . . that are truly minor in expense and inconvenience, that arise out of the ordinary course of the lessee's use of the premises, and that would in no event impose upon the lessee a burden greater than that imposed by the common law duty to prevent waste." (70 Cal.2d at p. 672, fn. 6.)

In addition, the court noted that accountability might be assumed by the lessee's changed use of the property causing it to fall within the realm of existent law not previously applicable. Recognizing under these circumstances that if the lessee were not held responsible, " . . . [the lessee] would have the lessor at his mercy." (*Id.,* at p. 673.) However, the court was quick to note that it made no comment on this rule regarding situations where the lease restricts the use of the premises or where the lessor has a direct interest in the specific use to which the lessee puts the premises. (*Id.,* at p. 673, fn. 8.)

other hand, our Supreme Court has held that the owner of land who con-structs a driveway adjacent to her property and who is thus duty bound by law to maintain same, " . . . could not relieve herself of such duty either by leasing the same . . . to her [tenant] or by contracting with him by the terms of said lease for the keeping of said premises and said driveway in a proper state of repair." (*Granucci* v. *Claasen* (1928) 204 Cal. 509, 512 [269 P. 437, 59 A.L.R. 435].)

The difference in the two holdings may be reconciled by characterizing the holding in *Glenn R. Sewell Sheet Metal, Inc.* v. *Loverdi, supra,* 70 Cal.2d 666, as the rule and the *Granucci* holding as the exception. As such, *Granucci* would appear to fall within one or two of the five exceptions delineated in *Ucello* v. *Laudenslayer, supra,* 44 Cal.App.3d at page 511, namely, " . . . where there is a nuisance existing on the property at the time the lease is made or renewed [citation], [or] when a safety law has been violated [citation], . . ."

Because we are unaware of any specific date upon which the subject shrubbery first became an alleged traffic hazard, we choose not to consider whether the hazard existed at the time defendants last rented their property, a point representing defendants' last "unequivocal" opportunity to carefully inspect same. (See *Burroughs* v. *Ben's Auto Park, Inc.* (1945) 27 Cal.2d 449, 453-454 [164 P.2d 897].) However, were it to be established that defendants should have anticipated that plant growth from their property could or would pose a potentially serious danger to travelers off the land, in violation of a municipal ordinance prohibiting said overgrowth (Los Angeles Mun. Code, § 62.200), the act of renting the premises and putting another party in possession does not relieve defendants of their duty nor would it immunize them from liability. (See *Grant* v. *Hipsher* (1967) 257 Cal.App.2d 375, 383 [64 Cal.Rptr. 892]; see also *Stanford* v. *Bailey Incorporated* (1955) 132 Cal.App.2d 725, 729-730 [282 P.2d 992].)[6, 7]

■ Given the error respecting the instructions that defendant landlords were required to have "actual knowledge" of the dangerous condition, it becomes highly probable that said instructions contributed to a defense verdict. Since evidence exists that defendants could and should very well have discovered the defect in a reasonable time prior to the time of collision, coupled with the fact that some evidence suggests that the overgrown flora substantially contributed to the collision injuring plaintiffs, it is difficult not

---

[6]We make no comment as to the viability of any claim for indemnification by lessor against lessee.

[7]It bears noting that in these cases, the violation of a safety law was such that it might pose a danger to the general public. Here, a shrub obstructing a public thoroughfare unassailably achieves the same effect.

to conclude that a different result would have been possible if said instructions were not given. Thus, the instructional error was prejudicial. As a result, the judgment is reversed. (Code Civ. Proc., § 475.) Costs to be awarded to plaintiffs/appellants.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied July 17, 1984, and respondents' petition for a hearing by the Supreme Court was denied August 30, 1984. Mosk, J., was of the opinion that the petition should be granted.