[Civ. No. 23529. Third Dist. Mar. 4, 1986.]

LEROY G. BROWN et al., Plaintiffs and Appellants, v.
DEPARTMENT OF VETERANS AFFAIRS, Defendant and Appellant.

**COUNSEL**

Desmond, Miller, Desmond & Bartholomew, and John P. McCarthy for Plaintiffs and Appellants.

Howell Y. Jackson, H. Dean Stiles and Arnulfo Hernandez, Jr., for Defendant and Appellant.

## OPINION

**SPARKS, J.**—Defendant Department of Veterans Affairs of the State of California appeals from a judgment in favor of plaintiffs LeRoy G. and Mae Louise Brown. The plaintiffs cross-appeal from the judgment. The judgment awarded the plaintiffs damages for the alleged negligence of the Department in failing to either procure sufficient insurance or to advise plaintiffs to procure such insurance upon a home they were purchasing through the Cal-Vet program. (Mil. & Vet. Code, § 984 et seq.) The Department contends: (1) the trial court erred in finding that the Department had a duty to either procure an adequate amount of insurance or to counsel plaintiffs on their insurance needs; (2) the Department's conduct was not the proximate cause of plaintiffs' loss; and (3) the Department is immune from liability to plaintiffs. The plaintiffs contend: (1) the court erred in interpreting the jury verdict; and (2) the court erred in apportioning costs on the basis of the parties' percentage of fault as found by the jury. Since we agree with the first contention of the Department, we shall reverse the judgment.

### FACTS

■ The purpose of the Cal-Vet program is to provide veterans with the opportunity to buy farms and homes. (*Department of Veterans Affairs* v. *Duerksen* (1982) 138 Cal.App.3d 149, 151-152 [187 Cal.Rptr. 832].) Under the program the Department buys farms and homes and sells them to the eligible veterans by a long-term installment contract at a low rate of interest. (*Ibid.*) The Department retains legal title to the property as security until the price has been paid in full. (*Ibid.*)

Plaintiffs first obtained Cal-Vet financing for the purchase of a home in about 1946. In about 1948 plaintiffs began the construction of a new home on property that they owned. Plaintiffs personally constructed the home, and in order to do so they borrowed money from relatives. The home took several years to complete. When the home was finished in 1952, plaintiffs refinanced it through Cal-Vet for $6,000.

Pursuant to Military and Veterans Code sections 987.2 and 987.3, plaintiffs' Cal-Vet contract contained provisions requiring them to insure and keep insured against fire all of the buildings on the property, and giving the Department the right to obtain insurance if the plaintiffs failed to do so.[1] In

---

[1]Paragraph 7 of plaintiffs' Cal-Vet contract provides in relevant part: "The Purchaser agrees to insure and keep insured against fire all buildings on said land." That paragraph further provides: "All policies shall be written with any loss payable to the department and the Purchaser, as their interest may appear, and shall be in such amount or amounts, and in such companies and under such conditions as may be specified by the department."

order to assist veterans in obtaining insurance the Department negotiates a master agreement with an insurance company. (See Ins. Code, §§ 1853.95, 1853.96.) By doing so the Department is able to assist veterans in obtaining more favorable coverage at lower premiums than an individual would be able to secure. In 1952, when plaintiffs refinanced their property, the Department had master contracts with several companies and the veteran purchasers were responsible for securing insurance from one of the companies through an agent of their choice. The plaintiffs contacted their insurance agent, Peter Chrisler and Son, and obtained insurance from the Fireman's Fund Insurance Company in the amount of $10,000.

The Department renegotiates its master agreement every five years. In 1960 the Department changed its procedure from entering into multiple master agreements to maintaining only one master agreement. Thereafter the Department entered into one agreement with the company that would provide the best coverage at the lowest rate and all Cal-Vet purchasers were required to maintain insurance under the master policy. Payments were made to the Department with the monthly contract payments, and the Department would forward the premiums to the insurer. The amount of insurance on Cal-Vet properties was increased each year in accordance with replacement cost factors obtained from the Marshall and Swift reporting service. This service reports the annual increase in replacement costs for various geographic areas in California, and the insurance on a Cal-Vet property would be automatically increased in accordance with those figures. The veteran is provided with an annual statement showing the amount of insurance maintained on the property through the master agreement. Additionally, when an insurance policy is up for renewal the Department includes an insert with the veteran's monthly contract statement advising that replacement costs are rising, and that additions or improvements would further increase the veteran's insurance needs, and advising the veteran to consider whether additional insurance is required. The veteran is provided with a postcard upon which he may indicate the amount of insurance coverage he desires.

In 1970, the plaintiffs desired to remodel and add a bathroom to their home. Plaintiffs' Cal-Vet contract required them to obtain the Department's approval for improvements or additions to the home. Plaintiffs applied for and received written consent to improve their home with their own funds. The improvement of the bathroom added approximately 55 square feet to the home. In applying for the Department's consent the plaintiffs were required to complete a written form which contained questions regarding insurance coverage. Plaintiffs checked a box which stated "Do not increase fire insurance coverage," to which Mrs. Brown added "at this time."

In 1973, the plaintiffs desired to make a major addition to their home. The addition would add approximately 700 square feet of living space to the home which would bring the total living space in the house to somewhat less than 2,000 square feet. Plaintiffs intended to finance this addition through Cal-Vet. They took a floor plan to the Department, but were told that they would be required to produce a more complete set of plans. Plaintiffs took a more complete set of plans to the Department, and they were told to obtain estimates on the cost of the work. While they were in the process of determining the cost of the work to be performed, they heard that the Department had run out of Cal-Vet funds. Plaintiffs testified that they returned to the Department and confirmed that due to a lack of funds their project could not be funded. Mr. Brown testified that they (plaintiffs) said they were going to go ahead with their plans under their own financing somehow or other, and "[t]hey said well, that's okay with us." ██ ██ Mrs. Brown testified that they said they would proceed on their own and there was no objection.[2] The plaintiffs thereafter proceeded with their project.

Mrs. Brown testified that she contacted the Department about insurance twice by telephone. Her testimony with regard to the first contact was ambiguous, however, it appears she may have made a call after receiving a tax assessment after the completion of the bathroom project. She believed she was probably going to notify the Department about an increase in their tax assessed value. She thought that the insurance on the property was for $20,200, and that the tax assessed value was $23,000 or something like that. Her recollection of the substance of the conversation was that she was informed that insurance was not required to cover the land and hard structures such as driveways, and "so you're probably okay."[3]

---

[2]Despite plaintiffs' attempt to argue to the contrary, it is clear that they did not obtain the Department's consent to the 1973 project. In testifying neither plaintiff would give a direct answer to a question, preferring instead to give vague and rambling responses. Nevertheless, they ultimately conceded that they did not pursue the matter after learning that they would not be able to obtain Cal-Vet financing. Plaintiffs' assertion that they thought a verbal consent from some unidentified person in a Department office was sufficient is contrary to the evidence since in the prior project plaintiffs in fact complied with the procedure for obtaining the Department's written consent for improvements to the property. In any event, this claimed verbal consent from an unidentified person is, as a matter of law, insufficient to constitute consent of the Department. (*Veterans' Welfare Board* v. *Burt* (1935) 4 Cal.App.2d 659, 661 [41 P.2d 587].) But whether plaintiffs complied with their contract is not really at issue here. The Department has not asserted a breach of contract against the plaintiffs. Rather, the question here is whether the Department was negligent in failing to increase plaintiffs' insurance, or to advise them to do so, to cover the addition to the home. In this regard there is no evidence in the record that upon completing the project the plaintiffs notified the Department of the major addition to their home; instead they rely upon this pre-project oral communication for their contention that the Department had notice of their increased insurance needs.

[3]This telephone conversation was believed to have occurred in 1972, after completion of

Mrs. Brown's second asserted contact with the Department occurred in June 1978. She testified that one of her sons had come home from college and asked her how much insurance they had on the house. She looked it up and was "appalled" to discover that it was only $31,000. She called the Department and spoke to a lady who seemed very knowledgeable. She was told that they were scheduled for an update on July 1, and she was satisfied. The plaintiffs went on vacation and did not return until the evening of July 13, 1978. When they returned there was a notice from the Department in their mail advising them their insurance was increased to $34,000. It was then too late at night to do anything about the inadequate insurance and, unfortunately, that was the night of the fire which caused plaintiffs' loss.

On the evening of July 13, 1978, a fire started in the plaintiffs' garage and spread to the house. The fire caused substantial damage to plaintiffs' home and, although the estimates of the extent of the damage were conflicting, the evidence supports the jury finding that the home was damaged to the extent of $69,757.29. Likewise, the evidence was conflicting on the question of the amount for which the house should have been insured, but it is clear that the insurance of $34,000 was very inadequate.

Plaintiffs brought an action against the Department. Their theory was that pursuant to the Military and Veterans Code, the Department was under a duty to insure the property for full replacement value, or to advise the plaintiffs to increase their insurance and that the Department was negligent in failing to do so. The jury returned a special verdict finding that both the Department and the plaintiffs were negligent and that the negligence of each were proximate causes of plaintiffs' damages. Plaintiffs were determined to have been 35.22 percent negligent, and the Department was found to have been 64.78 percent negligent. Plaintiffs' damages were found to be $69,757.29, "which includes the $34,000 paid." The trial court entered judgment in favor of the plaintiffs awarding them 64.78 percent of the total fire loss, less the $34,000 paid by their insurance company, for a total judgment of $11,188.77. Plaintiffs were awarded 64.78 percent of their costs. Both sides appeal.

## Discussion

■ Whenever a tort claim is made against a governmental agency the concept of governmental immunity arises. The question of immunity, however, should not be addressed until it is first determined that the defendant owed a duty of care to the plaintiffs. (*Williams* v. *State of California* (1983)

---

the bathroom project but before the major addition to the house which commenced in 1973. There is no evidence in the record to indicate that in fact plaintiffs were underinsured in 1972.

34 Cal.3d 18, 22 [192 Cal.Rptr. 233, 664 P.2d 137].) In other words, the question of immunity will only arise where it is determined that the governmental agency would be liable to the plaintiffs under general principles of tort law. (*Id.,* at p. 23.) ■ General tort principles establish that actionable negligence requires that the plaintiffs' injury be proximately caused by the breach of a legal duty which the defendant owed to the plaintiffs. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 488, p. 2749.) ■ In this case the pivotal question is whether the Department owed a duty to plaintiffs to make sure that their property was adequately insured.

■ Initially, we note that, in the absence of a statutory enactment specifically imposing a duty on the Department with regard to insurance, it is perfectly clear that the Department owed no duty to plaintiffs. Installment sale contracts, whereby the seller of land retains title as security, have long been used in California. Although early judicial decisions were unclear as to who should bear the risk of loss, it is now firmly established that unless the contract provides otherwise the risk of loss passes to the buyer when he obtains either title to or possession of the premises. (Civ. Code, § 1662.) While the buyer is in possession and the seller retains title for security, both parties have insurable interests in the property and either or both may obtain insurance. (*White* v. *Gilman* (1903) 138 Cal. 375, 377 [71 P. 436]; *Greco* v. *Oregon Mut. Fire Ins. Co.* (1961) 191 Cal.App.2d 674, 686 [12 Cal.Rptr. 802].) But in the absence of a contractual provision requiring a party to obtain and maintain insurance neither party has an obligation to the other to insure the property. (*White* v. *Gilman, supra,* 138 Cal. at p. 377.) The Cal-Vet contract in this case imposed upon the plaintiffs the duty to obtain and maintain insurance on the property. Under such circumstances, unless the provisions of the Military and Veterans Code can be construed as imposing a duty on the Department, the plaintiffs can make no claim against the Department based upon their own failure to adequately insure their interest. (*Long* v. *Keller* (1980) 104 Cal.App.3d 312, 317-320 [163 Cal.Rptr. 532]. See also *Russell* v. *Williams* (1962) 58 Cal.2d 487, 491-492 [24 Cal.Rptr. 859, 374 P.2d 827].)

■ Plaintiffs contend that the Military and Veterans Code imposes a duty on the Department to provide adequate insurance for their interest. "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Gov. Code, § 815.6.) "This section declares the familiar rule, applicable to both public entities and private persons, that failure to comply with applicable statutory or regulatory standards is negligence unless reasonable diligence has been exer-

cised in an effort to comply with those standards." (Law Revision Com. Comment to Gov. Code, § 815.6, 32 West's Ann. Cal. Codes, Gov. Code, p. 205.) ■ There is a three pronged test to determine whether a public entity may be liable for the failure to discharge a statutory or regulatory duty: (1) the enactment must impose a mandatory, not discretionary, duty; (2) the enactment must be intended to protect the plaintiff, or a class of which he is a member, from the particular kind of risk of injury suffered; and (3) breach of the mandatory duty must be the proximate cause of the injury suffered. (*State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 854 [197 Cal.Rptr. 914]. See also *King* v. *San Diego Electric Ry. Co.* (1917) 176 Cal. 266, 270 [168 P. 131].)

■ The Cal-Vet statutory scheme contains a number of provisions relevant here. Military and Veterans Code section 987.1 provides in relevant part: "The department in each individual case may specify the terms of the contract entered into with the purchaser. . . ." Section 987.2 provides: "The contract made between the department and purchaser shall provide that the purchaser maintain the farm or home as his place of residence and keep in good order and repair all buildings, fences, and other permanent improvements situated thereon and that the purchaser, if required, insure and keep insured against fire or other hazards, all buildings, fences, other permanent improvements, or crops on the property, loss, if any, under the policies therefor to be made payable to the department as its interest appears. Insurance shall be in the amount, with the insurance companies, and under the conditions specified by the department." Section 987.3 provides, among other things, that if the purchaser fails to keep the property insured then the department "may" obtain insurance and add the cost to the selling price of the property. Finally, section 987.4, subdivision (b) provides that the Department shall be "the sole judge of: [¶] (a) The legality or validity of taxes, assessments, charges, or encumbrances, and the amount necessary to be paid in satisfaction or discharge thereof. [¶] (b) The amount of insurance to be placed upon the buildings, fences, other permanent improvements, and crops and the amount necessary to be paid for the premiums for such insurance. [¶] (c) The necessity and nature of the work necessary to keep the buildings, fences, and other improvements in good order and repair, and the amount necessary to be paid therefor."

Plaintiffs contend that somewhere in these statutory provisions a mandatory duty was imposed upon the Department to appraise and reappraise their property, and apparently even to discover new unreported additions and improvements to the property, in order to make sure that Cal-Vet purchasers obtain sufficient insurance to protect their interests completely. We cannot agree. The Cal-Vet statutory scheme fails to satisfy the first two require-

ments of Government Code section 815.6 for the imposition of liability upon a public entity.

■ "In order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time." (*Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1], cited with approval in *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 909-910 [136 Cal.Rptr. 251, 559 P.2d 606].) ■ Pursuant to the specific terms of the Military and Veterans Code the requirement of insurance coverage is discretionary rather than mandatory. (See 38 Ops.Cal.Atty.Gen. 107, 109 (1961).) ■ Thus, the department "may" specify the terms of the Cal-Vet contract. The purchaser "if required" must keep the premises insured. If the purchaser fails to insure the premises the Department "may" insure the premises and charge the cost to the purchaser. But the question is not whether the Department had a mandatory or discretionary duty to require plaintiffs to maintain insurance on the premises. The Department in fact required that they so do. The question therefore is whether, in addition to requiring plaintiffs to maintain insurance sufficient to protect the Department's security interest, the Department had a duty to investigate the circumstances and to require that plaintiffs maintain sufficient insurance to protect their own interests as well.

We cannot agree with plaintiffs that the Department had such a duty. It is true that the code provisions provide that insurance shall be in the amount, with the companies, and under the conditions specified by the Department. (Mil. & Vet. Code, § 987.2.) And the Department is to be the sole judge of the amount of insurance and the premiums necessary therefor. (Mil. & Vet. Code, § 987.4.) But these provisions were intended to give the Department the authority to protect its security interest in the property, not to impose a duty on the Department to protect purchasers. This is indicated by section 987.2, which provides that if insurance is required then loss, if any, is to be payable to the Department as its interest appears. Moreover, these provisions are part of a general statutory scheme which gives the Department authority to protect its security interest with respect to such things as taxes and assessments, liens and encumbrances, the necessity and costs of repair, as well as insurance. These provisions are intended to enable the department to preserve the security for the debt it is owed. (See *Eisley* v. *Mohan* (1948) 31 Cal.2d 637, 643 [192 P.2d 5].) They give the Department authority to do what is commonly done by lenders financing the ac-

quisition of real property. (See 1 Miller & Starr, Current Law of Cal. Real Estate (1975 Rev.ed.) §§ 2:41, 3:39, pp. 273, 391.) ██ ██
Nothing in these provisions indicates that the Department had a mandatory duty to guarantee that plaintiffs maintained sufficient insurance to protect their own interests, and nothing indicates that these provisions were intended to protect plaintiffs against their own failure to procure adequate insurance rather than to simply enable the Department to protect its interest.[4]

A somewhat similar situation was at issue in *Graddon* v. *Knight* (1950) 99 Cal.App.2d 700 [222 P.2d 329]. There the plaintiffs obtained a federally insured "G.I. loan" for the purpose of constructing a home. Federal regulations with respect to such loans provided: "The holder shall require insurance policies to be procured and maintained in an amount sufficient to protect the security against the risks or hazards to which it may be subjected to the extent customary in the locality. All monies received under such policies covering payment of insured losses shall be applied to restoration of the security or to the loan balance." (99 Cal.App.2d at p. 703.) An explanatory bulletin was issued which stated: "The obligation upon the lender . . . to see that insurance in sufficient amount and types to protect the security against risks and hazards to the extent customary in the locality is procured and maintained, is clearly set forth in [the regulation]." (*Ibid.*) The loan in that case was secured by a deed of trust which specifically provided that it was in accordance with and subject to federal regulations with respect to such loans. In the deed of trust the plaintiffs agreed to keep

---

[4]Where the Legislature has intended to impose an obligation upon a lender with respect to insurance protection for a borrower, it has done so in unambiguous terms. In Vehicle Code section 5604 (formerly Veh. Code, § 187), the Legislature directed: "Every dealer who, upon transferring by sale, lease, or otherwise, any new or used vehicle of a type subject to registration, requires the transferee to insure the vehicle, and every lending agency which, as the holder of any security interest in any such vehicle, requires its obligor to insure the vehicle, shall, if the required insurance policy is obtained by the dealer or lending agency and the policy does not insure the transferee or obligor against damages resulting from the ownership or operation of the vehicle arising by reason of personal injury to or the death of any person, or from injury to property, notify the transferee or obligor of any such fact in writing on a document other than the insurance policy." While no cause of action is stated for the failure of a lender to require or to advise an obligor to obtain liability insurance (*Altman* v. *Morris Plan Co.* (1976) 58 Cal.App.3d 951, 956-959 [130 Cal.Rptr. 397]), where the lender undertakes to obtain "full coverage" but fails to obtain liability insurance for the obligor or to give the required notice then a cause of action for negligence may be stated. (*Dana* v. *Sutton Motor Sales* (1961) 56 Cal.2d 284, 287 [14 Cal.Rptr. 649, 363 P.2d 881].) The provisions of the Military and Veterans Code do not require the Department to give notice similar to that required in Vehicle Code section 5604. Nevertheless, the Department sent annual notices advising plaintiffs of the amount of insurance carried on the property, and periodically sent notices advising them that due to rising construction costs they should reappraise their insurance needs. Plaintiffs contend the Department was required to do more, that it had a duty to reappraise their insurance needs and to require or advise them to obtain more insurance. The provisions of the Military and Veterans Code do not impose such duty upon the Department.

the premises insured in the amount of their full insurable value, or less in the discretion of the lender. The plaintiffs failed to obtain insurance and, after a fire loss, filed a claim against the lender contending that the lender was under a duty to obtain or to require them to obtain insurance. The Court of Appeal rejected the contention. The lender satisfied its obligation to require insurance through the provision in the deed of trust pursuant to which the plaintiffs agreed to maintain insurance on the premises. It had no duty to do more. (*Id.*, at p. 704.) Here, as in *Graddon,* the plaintiffs agreed to maintain insurance on their property for the benefit of the Department. The Department did not assume an obligation to plaintiffs to ensure that they obtained adequate insurance to cover their own interest.

Plaintiffs contend that even if the Military and Veterans Code provisions do not impose a mandatory duty on the Department to guarantee that they maintain adequate insurance, then a departmental regulation does so. In the early years of plaintiffs' Cal-Vet loan section 309 of Title 12 of the California Administrative Code provided: "All properties purchased by the department are required to be covered by fire insurance which, in the judgment of the department, is sufficient to protect the department's investment therein. The policy covering the property must be issued by one of a group of insurance companies which is signatory to an agreement with the department. It is the responsibility of the purchaser, at the time of purchase and at the time of renewal of insurance, to determine that the insurance covering the property is adequate for his protection." (See 38 Ops.Cal.Atty.Gen., *supra,* p. 109.) In 1962 section 309 was amended to provide: "All properties purchased by the Department are required to be covered by property insurance including fire insurance, and all physical loss insurance for the full replacement value of such properties."[5]

We reject the contention that by the adoption of this regulation the Department assumed the duty of determining the total value for which Cal-Vet properties should be insured. Assuming, without deciding, that a regulation adopted subsequent to the execution of plaintiffs' contract may be made applicable to them (see *Roth* v. *Department of Veterans Affairs* (1980) 110 Cal.App.3d 622, 629-630 [167 Cal.Rptr. 552]), this regulation does not shift the plaintiffs' contractual obligation to obtain insurance to the Department. It serves the salutory purpose of requiring Cal-Vet purchasers to carry sufficient insurance to rebuild in the event of loss, rather than to merely satisfy the remaining balance on their loan. But it does not impose an affir-

---

[5]Section 309 has been repealed and replaced by section 360, which now provides in relevant part: "All properties purchased by the Department must be insured against fire and other hazards for the full replacement cost of the improvements or structures thereon. The insurance must be in such minimum amount and placed with such company or companies as the Department may determine from time to time . . . ."

mative duty on the Department to act to protect the purchasers' interests as well as its own. Here, as in *Graddon* v. *Knight, supra,* 99 Cal.App.2d 700, the obligation to obtain and maintain insurance remained with the plaintiffs.

 Plaintiffs assert that even if the Department did not have a mandatory duty to reappraise their property to determine the proper amount of insurance they should carry, there was evidence that the Department behaved negligently toward them. First, they point to the testimony of John O. Bronson, an expert in the field of insurance. When asked concerning the use of the Marshall and Swift data for updating insurance coverage he answered: "Well, the formula—excuse me—could be correct, but certainly they would have to and should recognize improvements along the line. And if those improvements, of course, were overlooked, then they're completely out of date and wrong." Plaintiffs added approximately 55 square feet to their home in the 1970 bathroom project, and approximately 700 square feet (well over 50 percent of the previous living space) in the 1973 project which were not included in the annual insurance updates.

It, of course, does not take an expert to establish that improvements and additions to a home should be considered in determining the proper amount of insurance to purchase. But the failure to include plaintiffs' improvements and additions is simply not chargeable to the Department. In the 1970 project plaintiffs complied with their contractual duty to obtain the Department's consent to the improvements. But they specifically and in writing advised the Department not to increase their insurance coverage. In 1973 plaintiffs failed to comply with their duty to obtain consent for the project, and their alleged preproject oral communication with an unidentified employee of the Department is, as a matter of law, insufficient to place the Department on notice of the improvement of their home. (*Veterans' Welfare Board* v. *Burt, supra,* 4 Cal.App.2d at p. 661.) Plaintiffs would apparently require the Department to make annual physical inspections of Cal-Vet homes in order to discover whether any improvements had been made which might increase insurance needs. It would be entirely unreasonable to impose such an onerous burden upon the Department.

Plaintiffs also point to Mrs. Brown's testimony concerning two telephone contacts with the Department with regard to insurance. In the first, asserted to be sometime around 1972, Mrs. Brown testified that she inquired about insurance with regard to the tax assessed value of the home. She believed that she was probably told that insurance did not have to cover the land and hard structures and that they were "probably okay." This testimony does not impose liability upon the Department. There is no evidence to indicate that plaintiffs were in fact underinsured at that time. The only evidence in that regard showed that plaintiffs' insurance at that time was actually well

in excess of the assessed value of the improvements on the property. Moreover, there is nothing to establish that the insurance plaintiffs carried in 1972 bore any relationship to their loss in 1978.

The second asserted contact occurred shortly before the loss. Mrs. Brown testified that she called the Department when she discovered that their insurance was only in the amount of $31,000, and was informed that they were due for an update on July 1, 1978. This contact is also insufficient to impose liability upon the Department. As we have noted, an oral communication with an unidentified Department employee is not binding upon the Department. More importantly, however, after this communication the Department had no more information than it had before. Mrs. Brown did not testify that she advised the Department of her estimate of the value of their home, nor did she claim to have requested a specific amount of insurance. And Mrs. Brown did not testify that she informed the Department employee of the extensive additions to the home of which the Department yet had no notice and which, according to plaintiffs' expert, was the major reason their insurance was inadequate.

Whether a defendant owes a duty of care in a given situation is a question of law for the court to determine. (*Wilson* v. *All Service Ins. Corp.* (1979) 91 Cal.App.3d 793, 796 [153 Cal.Rptr. 121].) For the reasons we have set forth we conclude that the Department did not owe a duty to plaintiffs to guarantee that they had sufficient insurance coverage to protect their property. Accordingly, the judgment cannot stand. In view of this disposition, it is unnecessary to consider the remaining issues in the appeal and on the cross-appeal.

The judgment is reversed.

Regan, Acting P. J., and Blease, J., concurred.