[No. B055904. Second Dist., Div. Seven. June 4, 1992.]

JEAN HAMILTON, Plaintiff and Appellant, v.
GAGE BOWL, INC., Defendant and Respondent.

1708

COUNSEL

Gelfand & Gelfand and Gary B. Gelfand for Plaintiff and Appellant.

Long, Brown & Weisberg and Elizabeth Ashley Rosebrock for Defendant and Respondent.

OPINION

LILLIE, P. J.—In an action for damages for personal injuries based on premises liability, plaintiff appeals from judgment of nonsuit in favor of defendant Gage Bowl, Inc., entered after the conclusion of plaintiff's opening statement. (Code Civ. Proc., § 581c.)

### FACTS

The complaint alleged: In a parking lot owned and operated by defendant Gage Bowl, Inc., plaintiff sustained personal injuries when she was struck by a sign which fell from a building adjacent to the parking lot owned by defendants General Veneer and Geneerco, Inc., and occupied by defendant Howard Manufacturing, Inc. Defendants negligently maintained, managed and operated the parking lot and the adjacent building.

Plaintiff settled with defendants General Veneer, Geneerco and Howard Manufacturing for $220,000 and the action was dismissed with prejudice as to those defendants. The action was ordered to arbitration as to the remaining defendant, Gage Bowl, Inc. Following rendition of an arbitration award of $130,000 in favor of plaintiff, Gage Bowl timely requested a trial de novo by jury. (Code Civ. Proc., § 1141.20.)

Plaintiff's opening statement, made at that trial, set forth the following facts which plaintiff intended to prove: On February 23, 1987, plaintiff participated in a senior citizens' bowling tournament at defendant's place of business, the Gage Bowling Alley. About 2:30 p.m., after the tournament concluded, plaintiff returned to her car in the parking lot owned by defendant and provided by it for patrons of its bowling alley. The north side of the parking lot extended to and abutted the south wall of a building owned by General Veneer and Geneerco and leased by Howard Manufacturing (the building). The asphalt surface of the lot had stripes designating parking spaces painted up to the wall. While there was no access to the building from defendant's parking lot, a sign was attached to the south wall of the building which read "Howard Ladders—Ventwood" and gave Howard's address. The sign, approximately 10 feet long and 4 feet high, was made of steel and was located about 12 feet up the wall from the surface of defendant's parking lot. The sign extended one or two inches out from the wall.

Plaintiff's car was parked on the portion of defendant's lot adjacent to the south wall of the building. As plaintiff was preparing to put her bowling ball and bowling shoes into the trunk of her car, the sign fell from the wall and struck plaintiff, inflicting personal injuries.

The sign was on the south wall of the building in 1979 when Ray Sevela purchased Gage Bowling Alley and its parking lot. Thereafter, someone from Howard Manufacturing removed the sign, placed another sign over it, and reattached the finished product to the south wall. The refurbished sign (the one which fell) was fastened to the wall by nails driven into grout, a method which did not conform to the building code. Mr. Sevela, the owner of the bowling alley and parking lot, did not inspect the sign before the accident.

When Sevela bought the bowling alley and the parking lot a sign reading "Additional parking across street" (Gage sign), three feet by three feet, was affixed to the south wall of the building eight or ten feet above the surface of the parking lot and east of the sign that fell from the wall. Sevela took down the Gage sign, refurbished it, and put it back up (with lug bolts) without asking permission from the owners or the tenant of the building. Sevela also painted a small portion of the south wall to cover graffiti, again without

permission from the owners or the tenant. Sevela would testify that he exercised control over the wall by rehanging the Gage sign on it and repainting parts of it.

After completion of plaintiff's opening statement, the trial court noted that one cannot be held liable for a dangerous condition of property which he does not own, possess or control. The court concluded that plaintiff's proposed evidence did not show that defendant exercised such control over the south wall as to render defendant liable for the injuries sustained by plaintiff when the sign fell from the wall.

The court invited defendant to move for a nonsuit. Defendant did so. The motion was granted (Judge Birney) and judgment of nonsuit entered (Judge Torribio). Plaintiff appeals from the judgment.

## DISCUSSION

## I

### STANDARD OF REVIEW

■ A motion for nonsuit is tantamount to a demurrer to the evidence by which a defendant contests the sufficiency of plaintiff's evidence before presenting his or her own. (*Loral Corp.* v. *Moyes* (1985) 174 Cal.App.3d 268, 272 [219 Cal.Rptr. 836].) It presents a question of law, namely, whether the evidence offered in support of plaintiff's case would support a judgment for plaintiff. (*Ibid.*) In considering a motion for nonsuit on an opening statement, a trial court " 'must accept as true all of the facts set forth in the statement, must give those facts all the value to which they are legally entitled, and must indulge in every legitimate inference which may be drawn therefrom.' [Citation.] '[¶] In an appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' [Citation.]" (*Dong* v. *Board of Trustees* (1987) 191 Cal.App.3d 1572, 1577 [236 Cal.Rptr. 912].) The evidence offered in the opening statement must, however, be substantial evidence sufficient to support a judgment in favor of plaintiff. (*Hays* v. *Vanek* (1989) 217 Cal.App.3d 271, 288 [266 Cal.Rptr. 856].)

Since a motion for nonsuit after plaintiff's opening statement is designed to call attention to correctable defects, granting such a motion is proper only where it is clear that counsel has stated all of the facts he expects to prove. (*John Norton Farms, Inc.* v. *Todagco* (1981) 124 Cal.App.3d 149, 161 [177 Cal.Rptr. 215].) The record discloses that plaintiff's counsel was given every

opportunity to state all of the facts he hoped to prove to establish plaintiff's case.

## II

### PREMISES LIABILITY

The issue presented by defendant's motion for nonsuit is whether defendant owed any duty to plaintiff. ■ Without a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member, no negligence is established. (*Southland Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656, 663 [250 Cal.Rptr. 57].) Whether a defendant owes a duty of care in a given situation is a question of law for the court to determine. (*Brown* v. *Department of Veterans Affairs* (1986) 178 Cal.App.3d 392, 406 [224 Cal.Rptr. 149].)

■ Generally, a landowner has no right to control and manage property owned by another. (*Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 725 [246 Cal.Rptr. 199].) Accordingly, a defendant cannot be held liable for a defective or dangerous condition of property which defendant did not own, possess, or control. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747].) "[T]he duty to take affirmative action for the protection of individuals coming onto one's property 'is grounded in the possession of the premises and the attendant right to control and manage the premises.' [Citation.] Without the 'crucial element' of control over the subject premises [citation], no duty to exercise reasonable care to prevent injury on such property can be found." (*Gray* v. *America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 81 [256 Cal.Rptr. 877].)

### A

■ Plaintiff contends the sign that fell and injured her was part of the parking lot which defendant owned. In support of this theory plaintiff argues as follows: Civil Code section 659 defines land to include "free or occupied space for an indefinite distance upwards as well as downwards, subject to limitations upon the use of airspace imposed, and rights in the use of airspace granted by law." Civil Code section 829 provides: "The owner of land in fee has the right to the surface and to everything permanently situated beneath or above it." The sign, which extended one or two inches out from the wall, occupied the airspace above defendant's parking lot and therefore was part of the lot.

A literal interpretation of Civil Code sections 659 and 829 was rejected in *Hinman* v. *Pacific Air Transport* (9th Cir. 1936) 84 F.2d 755, certiorari denied

300 U.S. 655 [81 L.Ed. 865, 57 S.Ct. 431], wherein the court stated: "Title to the airspace unconnected with the use of land is inconceivable. Such a right has never been asserted. It is a thing not known to the law. . . . [¶] We own so much of the space above the ground as we can occupy or make use of, in connection with the enjoyment of our land. This right is not fixed. It varies with our varying needs and is coextensive with them. The owner of land owns as much of the space above him as he uses, but only so long as he uses it. All that lies beyond belongs to the world." (84 F.2d at pp. 757-758.)

From the facts set forth in plaintiff's opening statement, it may reasonably be inferred that defendant "used" the airspace above its parking lot adjacent to the south wall of the building to a height necessary to permit its patrons to park their cars abutting the wall. It may not be inferred, however, that defendant used, or even needed, the airspace 12 feet above the surface of its parking lot into which the sign intruded. Accordingly, we reject plaintiff's contention that under Civil Code sections 659 and 829 defendant owned the sign because it was within the air space above defendant's parking lot.

*B*

█ Taking a different tack, plaintiff contends that defendant exercised sufficient control over the south wall of the building to warrant imposition of a duty on defendant to inspect the sign affixed to the wall.

In support of this contention, plaintiff relies on the definition of the premises of a business owner set forth in *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232 [60 Cal.Rptr. 510, 430 P.2d 68]: "[O]ne who invites another to do business with him owes to the invitee the duty to exercise reasonable care to prevent his being injured on 'the premises.' The physical area encompassed by the term 'the premises' does not, however, coincide with the area to which the invitor possesses a title or a lease. The 'premises' may be less or greater than the invitor's property. The premises may include such means of ingress and egress as a customer may reasonably be expected to use. The crucial element is control. . . . An invitor bears a duty to warn an invitee of a dangerous condition existing on a public street or sidewalk adjoining his business which, because of the invitor's special benefit, convenience, or use of the public way, creates a danger." (*Id.* at pp. 239-240; fns. omitted.)

Plaintiff attempts to bring the instant case within the rule of *Schwartz* by arguing that defendant benefited from the wall adjacent to defendant's parking lot by maintaining its own Gage sign on the wall. Further, defendant exercised control over the wall by touching up the paint on it and rehanging

the Gage sign there, all without permission of the owners or the tenant of the building. In so arguing, plaintiff overlooks the following language in *Schwartz*: "An invitor may be liable for an injury, whether it occurs on his property or on a common passageway or on an adjacent sidewalk or street being used for his special benefit *if, and only if, the injury is caused by a dangerous condition*, or unreasonable risk of harm, *within the invitor's control.*" (*Schwartz* v. *Helms Bakery Limited, supra*, 67 Cal.2d at p. 243, fn. 10, italics added; see also *Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 841-842 [206 Cal.Rptr. 136, 686 P.2d 656].)

The dangerous condition of property which caused plaintiff's injuries was not the wall, but the sign affixed to the wall or, more accurately, the means by which the sign was affixed. Plaintiff's opening statement included facts intended to show that defendant exercised control over the wall. Plaintiff failed to outline any facts indicating that defendant exercised control over the sign as opposed to the wall. It follows that plaintiff's proposed evidence was insufficient to establish a duty on defendant's part to discover the dangerous condition of the sign—that portion of the property not owned by defendant which caused plaintiff's injuries.

## C

Superimposed upon the criteria for determining the existence of a duty of care in a particular category of negligence (here, premises liability) are the following universal factors: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; see also *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193].)

Plaintiff contends these factors require the imposition of a duty on defendant to have inspected the sign and discovered the defective means by which it was affixed to the wall. We do not agree.

While it was foreseeable that plaintiff would be injured if the sign fell, it was not foreseeable that such an accident would occur. Plaintiff's opening statement does not permit the inference that the appearance of the sign gave

any indication that it was improperly fastened to the wall and was about to give way.

It is certain that plaintiff was injured when the sign fell, but closeness of the connection between defendant's conduct and plaintiff's injuries is lacking. While the sign was located above a portion of defendant's parking lot, it belonged to, and was fastened to, a building that defendant did not own. Nothing in the facts outlined by plaintiff could have alerted defendant to the possibility that the sign would come loose from its moorings and fall to defendant's parking lot below.

For the reasons set forth above, defendant's conduct in failing to discover and remedy the faulty means by which the sign was affixed to the wall was not morally blameworthy. Under the circumstances shown by the record, defendant would have acted as an intermeddler, and without any articulable reason, had it undertaken to send one of its employees 12 feet up a ladder to check whether the sign was securely fastened to the wall.

Future harm to business invitees might be prevented if a duty were imposed on owners of business premises to inspect adjacent property owned by others for possible defects in such property which could injure the business owners' customers. However, the burden of such a duty would be considerable inasmuch as the business owners would have to obtain permission from adjacent property owners to inspect the latter's premises. Further, such a request might well engender ill will on the part of the adjacent owners at the thought that their proper maintenance of their own property was being challenged by their neighbors. The consequences of imposing such a duty of inspection also might be expected to affect the community adversely by driving some enterprises out of business or causing them to raise prices to make up for the cost of taking the time from one's business that such a duty would entail.

As to the availability, cost and prevalence of insurance covering liability for injury sustained on the insured's property because of a defect in neighboring property, we can only hazard the opinion that the cost of such insurance—if it is available—would be high, as is the case with most forms of insurance.

### Conclusion

Plaintiff's opening statement did not set forth facts imposing a duty on defendant to inspect the sign either under premises liability concepts or under the factors set forth in *Rowland* v. *Christian, supra,* 69 Cal.2d 108. Accordingly, defendant's motion for nonsuit was properly granted.

Disposition

The judgment is affirmed.

Woods (Fred), J., concurred.

**JOHNSON, J.**—I respectfully dissent. I believe Gage Bowl had a duty to inspect the sign and the judgment of nonsuit should be reversed.

The majority correctly cites the following rule as stated in *Schwartz*: "An invitor may be liable for an injury, whether it occurs on his property or on a common passageway or on an adjacent sidewalk or street being used for his special benefit, *if, and only if, the injury is caused by a dangerous condition, or unreasonable risk of harm, within the invitor's control.*" (Italics added.) (*Schwartz v. Helms Bakery Limited* (1967) 67 Cal.2d 232, 243, fn. 10 [60 Cal.Rptr. 510, 430 P.2d 68].) However, I respectfully disagree with the majority's application of this rule to the facts of this case.

The majority contends Hamilton's opening statement failed to indicate Gage Bowl exercised control over the sign within the meaning of *Schwartz*. It therefore concluded Gage Bowl had no duty to discover the dangerous condition of the sign. To the contrary, I believe Hamilton's opening statement set forth facts to indicate Gage Bowl exercised sufficient control over the sign to impose upon it the duty to inspect the sign.

Hamilton clearly says in her opening statement the sign protruded one or two inches out from the wall. In general, "[n]o person may erect buildings or other structures on his own land so that any part thereof, however small, extends beyond his boundaries and encroaches upon adjoining premises. The maintenance of an encroachment may be a continuing trespass or a nuisance or both." (2 C.J.S. Adjoining Landowners (1972) § 40, p. 43.) "[A]n encroachment may consist of . . . an invasion of the space above [adjoining] land by projecting box screens, cornices and sills, eaves or gutters, or windows, or an overhanging roof or overhanging walls." (2 C.J.S. Adjoining Landowners, *supra*, § 41, p. 44.)

Where a building overlaps or encroaches upon the space above adjoining land, the encroachment constitutes a nuisance, which may give a right of action for damages or for a mandatory injunction to compel removal. (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 426, p. 608; see also *Kafka v. Bozio* (1923) 191 Cal. 746 [218 P. 753, 29 A.L.R. 833]; *Case v. Sisich* (1929) 97 Cal.App. 106 [275 P. 492]; *Harland v. Noto* (1951) 105 Cal.App.2d 740 [233 P.2d 575].)

In *Kafka* the upper portions of defendant's building encroached a scant *two inches* over the space on plaintiff's adjoining land. This invasion damaged an existing building on that lot. As the encroachment progressively increased and defendant did nothing, plaintiff brought suit. The Supreme Court held an encroachment upon the space above the land was a nuisance, and the maintenance of such an encroachment constituted a continuing trespass or a nuisance. (*Kafka* v. *Bozio*, *supra*, 191 Cal. 746, 747, 748, 751.) In *Case*, the First District held defendant's bay windows, cornices, finish and extensions which were situated nine feet above ground and overhung eighteen inches into the space above plaintiff's land constituted a nuisance. (*Case* v. *Sisich*, *supra*, 97 Cal.App. at p. 110.)

Not only have the courts found that minor encroachments over a landowner's property constitute a nuisance, but they have made it clear the landowner has the right to have the offending nuisance removed. "[T]here can be no question but that a mandatory injunction may be granted to compel an encroachment to be removed from land with which it interferes." (*Lusk* v. *Krejci* (1960) 187 Cal.App.2d 553, 556 [9 Cal.Rptr. 703]; also see *Agmar* v. *Soloman* (1927) 87 Cal.App. 127, 138 [261 P. 1029].) In *Harland*, the Second District upheld a mandatory injunction granted to remove eaves and a bay window which overhung adjoining property. (*Harland* v. *Noto*, *supra*, 105 Cal.App.2d 740.)

In light of the foregoing authority, Gage Bowl exercised control over the sign because, by virtue of the sign's encroachment upon the airspace above Gage Bowl's parking lot, Gage Bowl could have brought suit to compel the sign's owner to remove the sign.[1] Thus, although Gage Bowl did not own, hang or maintain the sign, it exercised the requisite control over that sign. This business owner was in a position to compel removal of the sign or, through threat of a nuisance suit, to force the sign's owners to properly hang and maintain it. As the sign in fact was hung and maintained it constituted a "dangerous condition or unreasonable risk of harm" and one "within the invitor's [defendant's] control." Hence, under *Schwartz*, Gage Bowl may be liable for the injury this dangerous condition caused to an invitee on its property.

"Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the

---

[1] Similarly, in *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 232 [282 P.2d 69] where plaintiff was electrocuted on defendant's property when plaintiff's crane touched a power line owned and maintained by the state, the court held while "[i]t is true that California rather than defendant was maintaining the power line, yet defendant had control to the extent that it could have the line deenergized . . . ."

negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition *or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises.* His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it." (*Hatfield* v. *Levy Brothers* (1941) 18 Cal.2d 798, 806 [117 P.2d 841], italics added.)

Hamilton does not claim Gage Bowl had actual or constructive knowledge of the dangerous condition of the sign. However, it is well established that the landowner's lack of knowledge of the dangerous condition is not a defense. (*Swanberg* v. *O'Mectin* (1984) 157 Cal.App.3d 325, 329 [203 Cal.Rptr. 701].) " '[The landowner] has an *affirmative duty* to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must *inspect* them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable.' " (*Ibid.* at p. 330, italics in original.) The issue then is whether Hamilton's opening statement set forth facts suggesting Gage Bowl had the opportunity to inspect the sign and whether a reasonable inspection would have revealed the unsafe condition.

"Whether the peril had existed for a time of sufficient duration to enable a reasonably prudent person to discover and remove it prior to appellant's visit [is] a question of fact for the jury," and may be proved by circumstantial evidence. (*Lehman* v. *Richfield Oil Corp.* (1953) 121 Cal.App.2d 261, 264 [263 P.2d 13]; see also *Louie* v. *Hagstrom's Food Stores* (1947) 81 Cal.App.2d 601, 607 [184 P.2d 708].)

Hamilton claims in her opening statement the sign had been improperly and dangerously mounted "for years." She claims Gage Bowl would have discovered the dangerous condition by simply climbing a ladder and looking at the way in which the sign was suspended, since it was hung with nails driven into the grout and Gage Bowl knew this to be unsafe.

Viewing the evidence proffered in the opening statement most favorably to Hamilton and drawing reasonable inferences therefrom, it cannot be said Gage Bowl did not have the opportunity to inspect the sign, nor that a reasonable inspection would not have revealed the dangerous condition. As established earlier, Gage Bowl had the power to compel removal or rehanging of the dangerous sign if it had conducted this inspection. Since Gage Bowl had control over the sign and knew, if defective, the sign could pose a

danger to its invitees, Gage Bowl had a duty to inspect and discover the dangerous condition of the sign.

Sound policy justifies imposing a duty on a business proprietor to inspect a sign which is attached to adjoining premises but which overhangs its business premises. There is always some risk a sign may fall onto land over which it hangs and injure any person below (particularly when the encroaching sign is as large as the one in the present case—approximately 10 feet by 6 feet). It is equally clear the owner of the premises upon which the sign encroaches has the power to remove the danger. The well-established rule is "that one who invites another to do business with him must exercise due care for his safety upon all premises of the business over which he exercises control." (*Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d 232, 238.) It follows then that a business proprietor who invites customers onto its property for its own economic benefit should be duty-bound to ensure any overhanging signs pose no potential danger to those customers.

Assuming Hamilton could prove what she asserted in her opening statement, the sign was positioned in a way which gave Gage Bowl the legal right to demand its removal or repair. According to well-established principles of California law, this made Gage Bowl responsible for the safety of the sign and meant it owed Hamilton a duty to inspect that sign. Again according to the Hamilton's opening statement, Gage Bowl made no such inspection during the many years the sign hung precariously over its parking lot. For these reasons, I would reverse the judgment for nonsuit.

Appellant's petition for review by the Supreme Court was denied August 20, 1992. Mosk, J., was of the opinion that the petition should be granted.