[No. A075319. First Dist., Div. Three. Nov. 17, 1997.]

LETICIA CONTRERAS, Plaintiff and Appellant, v.
MARK ANDERSON et al., Defendants and Respondents.

**COUNSEL**

William J. Petzel for Plaintiff and Appellant.

Caudle, Welch, Politeo & Bovee, Michael R. Welch, Kelly A. Kilkenny and Stephanie L. Benedict for Defendants and Respondents.

**OPINION**

PHELAN, P. J.—Leticia Contreras appeals from a summary judgment by which the Alameda Superior Court dismissed her premises liability complaint against respondents Mark Anderson and Jennifer Boehler. She alleged respondents were liable for injuries suffered from a fall on a brick walkway contained in a city-owned planting strip in front of their property. The trial court granted respondents' motion for summary judgment pursuant to *Williams* v. *Foster* (1989) 216 Cal.App.3d 510 [265 Cal.Rptr. 15] (*Williams*), ruling that "a property owner is not liable to [the] public merely for failing to maintain [a] public sidewalk."

Contreras contends that *Williams, supra,* 216 Cal.App.3d 510 is not applicable to her case, and that respondents are liable under four alternative theories of liability. First, she contends the evidence is sufficient to raise a triable issue of fact whether respondents controlled the public planting strip and, thus, owed her a duty of care under the recent Supreme Court decision *Alcaraz* v. *Vece* (1997) 14 Cal.4th 1149 [60 Cal.Rptr.2d 448, 929 P.2d 1239] (*Alcaraz*). Second, she contends the evidence is sufficient to raise a triable issue of fact whether an alteration was made on the planting strip that specially benefited respondents' property so as to give rise to a duty under *Sexton* v. *Brooks* (1952) 39 Cal.2d 153 [245 P.2d 496] and similar cases. Third, relying on *Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826 [87 Cal.Rptr. 173] and *Jones* v. *Deeter* (1984) 152 Cal.App.3d 798 [199 Cal.Rptr. 825], she claims respondents owed her a duty of care because they, by custom, maintained the planting strip. Finally, although not raised below, Contreras claims respondents are liable to her under the "Good Samaritan Rule."

## FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 1995, Leticia Contreras filed a complaint against respondents under a theory of premises liability. Contreras claimed that on January 6, 1994, she "slipped and fell on [a] brick pathway between the curb and sidewalk in front of the premises located at 416 Kentucky Ave., City of Berkeley."[1] She further alleged respondents "negligently owned, maintained, managed and operated" the brick walkway where she fell and that respondents' acts were "the legal (proximate) cause of [her] injuries." In her deposition, Contreras stated that on the day of the alleged fall she parked her car next to the curb in front of respondents' property and got out of her car, taking one step onto the brick walkway and then slipping forward.[2] She also claimed it was dark and that there were fallen leaves on the brick walkway.

On April 6, 1995, respondents filed an answer denying liability. After nonbinding arbitration, Contreras requested a trial de novo on January 22, 1996. On April 9, 1996, respondents filed a motion for summary judgment or, in the alternative, for summary adjudication of issues. Respondents asserted Contreras fell on property "neither owned, modified, or controlled" by them, and, as such, they "owe[d] no duty to . . . Contreras for any injuries alleged to have resulted from her claimed fall."

Undisputed evidence established that, at the time of Contreras's alleged fall, the premises at 416 Kentucky Avenue were owned by respondents, but the planting strip was owned by the City of Berkeley (City).[3] Respondents submitted a declaration from Andreas Deak, a licensed land surveyor, stating that a 13-foot-wide strip of land owned by the City extended from the curb of Kentucky Avenue to respondents' property line. This strip of land encompassed a seven-and-one-half-foot-wide planting strip, within which the brick path was located, and a five-foot-wide sidewalk adjacent to respondents' property line. A wooden fence runs along the property line between respondents' front yard and the city-owned sidewalk. The brick path led from the curb—but separated by the sidewalk—to the front gate in the fence in front of respondents' property. The planting strip also contained ivy and a deciduous tree that shed leaves on the brick path.

At the time of the incident, Anderson had lived at 416 Kentucky Avenue for over 10 years and Boehler about 8. They claimed they had not altered or

---

[1]The "brick pathway" is variously referred to as "brick walk," "brick walkway," "pathway," "walkway," and "brick path."

[2]According to the appellant's opening brief, Contreras was on her way to visit Edith Lara, respondents' housekeeper, but Contreras stated in deposition that neither Lara nor respondents knew she was coming.

[3]The "planting strip" is also referred to as the "parkway." We refer to it as the "planting strip" in this opinion.

repaired the planting strip or planted any trees. Contreras did not offer any evidence to dispute this claim in her opposition to respondents' summary judgment motion. Instead, she claimed that the planting strip had been altered, i.e., the brick walkway had been constructed for the benefit of respondents' property based on photographs of the portion of the planting strip in front of respondents' property. However, during oral argument in the trial court, Contreras asserted that either respondents or their predecessor in title had built the brick walkway. Submitting only photographs of the planting strip on Kentucky Avenue, Contreras offered no evidence indicating when the brick path was built and the tree planted or by whom.

Despite denying they "maintained" the tree, respondents admitted that, prior to and at the time of the alleged accident, they trimmed the tree about twice a year and swept fallen leaves off the brick path on a regular basis. Respondents' housekeeper, Edith Lara, also swept the brick path a couple of times a week. Contreras submitted a declaration by respondents' neighbor, Stephen Bedrick, who saw residents on Kentucky Avenue "watering, tree trimming, plant pruning, planting and removing flowers and bushes, general gardening, sweeping, removal of trash and debris." He claimed he saw Boehler "gardening" in the planting strip in front of respondents' house.

Contreras asserted that respondents "exercised dominion and control" over the planting strip, an allegation which respondents denied. In addition to respondents' regular trimming and sweeping, she quoted Boehler as having referred to the tree as "our tree" and the brick path as "our brick path" during her deposition in this case. Moreover, Contreras alleged the planting strip was by custom maintained by property owners on the 400 block of Kentucky Avenue. Her evidence included Bedrick's deposition, in which he claimed he had never seen City workers maintaining the planting strip, and photographs depicting other property owners' treatment of the planting strip along the 400 block of Kentucky Avenue.

Respondents claimed that prior to the time of the alleged accident, they did not have knowledge and had not received any complaints, including from the City, that the brick path was defective or otherwise in a dangerous condition in need of repair. Although Anderson was aware the brick path sloped from the curb to the sidewalk, he maintained the angle of the slope had remained the same since he first moved in. In her deposition, respondents' housekeeper said she had never slipped herself and did not know of anyone ever slipping on the brick path before Contreras's alleged fall. Bedrick also testified he did not know of anyone who had slipped on the brick path before the incident.

Contreras presented evidence that the brick path posed a hazard to the public in the form of a declaration by Dr. Robert G. Liptai, a safety engineer,

who asserted that the slope of the brick path was at an angle steeper than required by the Uniform Building Code. After performing several tests, he concluded that the unsafe coefficient of friction of the brick path when covered with fallen leaves made it hazardous. Although respondents did not raise any evidentiary objections to this expert testimony, they denied that the brick path was in a hazardous condition.

On May 22, 1996, the superior court granted respondents' motion for summary judgment on the ground that "[a]s a matter of law, a property owner is not liable to [the] public merely for failing to maintain [a] public sidewalk, [*Williams* v. *Foster* (1989) 216 Cal.App.3d 510]."[4] Contreras thereafter filed her appeal from the summary judgment.[5]

## DISCUSSION

### I. *Standard of Review*

◼ We review a summary judgment de novo. (*Environmental Protection Information Center* v. *Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1015-1016 [50 Cal.Rptr.2d 892].) To determine whether a summary judgment was proper, we follow the same approach required of the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) Summary judgment is proper "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

In a summary judgment motion, the moving party has the burden to establish that the claims of the opposing party are entirely without merit on any legal theory. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210

---

[4]We note that since *Alcaraz, supra*, 14 Cal.4th 1149 was under review at the time respondents' motion for summary judgment was granted, the trial court did not have the benefit of the Supreme Court's decision in that case. However, the decision of Division Two of this court in *Alcaraz* v. *Vece* (Nov. 9, 1995) A066085, review granted (Feb. 29, 1996, S050761), affirmed 14 Cal.4th 1149, was briefed and argued before the trial court. The parties have had a full opportunity in this court to brief the decision in *Alcaraz, supra*, 14 Cal.4th 1149, after it was filed on January 31, 1997.

[5]An appeal lies only from the final judgment in the case, and not from interlocutory orders or rulings. (Code Civ. Proc., § 904.1.) The record does not reflect whether final judgment was ever entered. However, we may and, in this case, do "amend the order granting summary judgment to make it an appealable judgment and construe the notice of appeal as applying to the judgment. [Citations.]" (*Dover* v. *Sadowinski* (1983) 147 Cal.App.3d 113, 115 [194 Cal.Rptr. 866].)

Cal.Rptr. 762, 694 P.2d 1134].) Where the moving party is a defendant, he or she must either negate a necessary element of the plaintiff's case or state a complete defense. (*Garcia* v. *Rockwell Internat. Corp.* (1986) 187 Cal.App.3d 1556, 1560 [232 Cal.Rptr. 490].) The party opposing a summary judgment then has the burden of demonstrating that triable issues of material fact exist. (*Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1385 [265 Cal.Rptr. 412].)

## II. *Duty to Maintain Public Sidewalks*

█ Respondents contend that a duty imposed by a Berkeley City ordinance to maintain abutting public sidewalks does not extend to a member of the public. As we have noted, the trial court agreed and granted summary judgment under the authority of *Williams, supra,* 216 Cal.App.3d 510.

The *Williams* court, relying on an earlier opinion in *Schaefer* v. *Lenahan* (1944) 63 Cal.App.2d 324 [146 P.2d 929] (*Schaefer*), held that, in the absence of clear and unambiguous legislative language, a statute or ordinance requiring abutting landowners to maintain public sidewalks does not impose a legal duty of care toward members of the public. (216 Cal.App.3d at p. 521.) In *Schaefer*, the court concluded that the purpose of section 31 of the Improvement Act of 1911 as amended in 1935 (Stats. 1935, ch. 771, § 2, pp. 2148-2149), which imposed a duty on the abutting landowner to maintain public sidewalks, was to provide "a statutory method by which the city may collect the cost of repairs from the property owner," and did not "impose liability upon such owners, either to travelers or to the city, for injuries incurred by reason of the defective sidewalk."[6] (63 Cal.App.2d at pp. 326-328.) The court held that "To impose a wholly new duty upon the property owner in favor of third persons would require clear and unambiguous [statutory] language." (*Id.* at p. 332.) The *Williams* court concluded that Streets and Highways Code section 5610, which derives from and contains language virtually identical to that of section 31 of the Improvement Act of 1911 as amended in 1935, likewise does not impose on the abutting landowner a duty of care toward the public. (216 Cal.App.3d at p. 521.) By analogy, the court applied the *Schaefer* analysis to the San Jose ordinances, which contain language "substantially similar" to section 31 of the Improvement Act of 1911. (*Id.* at pp. 521-522.) The court further noted, "The [City of San Jose] could have enacted ordinances which expressly made abutting owners liable to members of the public for failure to maintain the sidewalk or parkway, but did not." (*Id.* at p. 522, fn. omitted.)

---

[6]The *Schaefer* holding gave rise to the "Sidewalk Accident Decisions Doctrine." (See generally, *Jones* v. *Deeter, supra,* 152 Cal.App.3d at p. 803.)

In relevant part, Berkeley City Ordinance chapter 1604, section 16.04.010, provides that an adjoining landowner "must at all times keep [an abutting] sidewalk in such condition that it will not endanger persons or property passing thereon and will not interfere with public convenience in the use thereof."[7] This language is substantially similar to that contained in Streets and Highways Code section 5610: "[An adjoining landowner] shall maintain any sidewalk in such a condition that the sidewalk will not endanger persons or property and maintain it in a condition which will not interfere with the public convenience in the use of those works or areas . . . ."[8] Like the Streets and Highways Code, the Berkeley ordinances do not provide any cause of action against the abutting owner for injuries suffered on the sidewalk, but imposes only penalties payable to the City for violations of these ordinances. (Berkeley Ord., ch. 1, § 1.20 et seq.) Without clear and unambiguous legislative language, the duty to maintain abutting public sidewalks does not extend to members of the public for injuries suffered there. (*Williams, supra*, 216 Cal.App.3d at pp. 521-522; see also *Selger* v. *Steven Brothers, Inc.* (1990) 222 Cal.App.3d 1585, 1590-1591 [272 Cal.Rptr. 544] [Los Angeles ordinances, which imposed a duty to clean sidewalks, did not "expressly or unambiguously" create a standard of care owed to pedestrians].) Accordingly, we agree with the trial court that respondents cannot be found liable under the Berkeley City Ordinance for injuries Contreras allegedly suffered on the brick walkway within the city-owned planting strip.[9]

---

[7]Berkeley City Ordinance section 16.04.010 provides in full: "It is unlawful for any person, firm or corporation owning or having in charge or control, any building, lot or premises in the city fronting on any portion of an improved street or way, where a sidewalk is laid, either as owner, lessee, tenant or otherwise, to allow any portion of such sidewalk in front of such building, lot or premises to be out of repair, and such person, firm or corporation must at all times keep such sidewalk in such condition that it will not endanger persons or property passing thereon and will not interfere with public convenience in the use thereof."

[8]Streets and Highways Code section 5610 provides in full: "The owners of lots or portions of lots fronting on any portion of a public street or place when that street or place is improved or if and when the area between the property line of the adjacent property and the street line is maintained as a park or parking strip, shall maintain any sidewalk in such condition that the sidewalk will not endanger persons or property and maintain it in a condition which will not interfere with the public convenience in the use of those works or areas save and except as to those conditions created or maintained in, upon, along, or in connection with such sidewalk by any person other than the owner, under and by virtue of any permit or right granted to him by law or by the city authorities in charge thereof, and such persons shall be under a like duty in relation thereto."

[9]Contreras argues for the first time on appeal that whether the planting strip is part of the "sidewalk" is a triable issue of fact. However, California Streets and Highways Code section 5600 defines "sidewalk" as including "a park or parking strip maintained in the area between the property line and the street line . . . ." By analogy, we agree with the trial court's *implicit determination that for purposes the Berkeley City Ordinance, "sidewalk" includes the* planting strip in this case.

Contreras does not seriously challenge the holding of *Williams*, or the trial court's application of the rule of *Williams* to this case. Rather, she contends that *Williams* is not dispositive because respondents owed her a duty of care under alternative theories of liability. We turn now to those contentions.

### III. *"Control" Under Alcaraz*

■ Ordinarily, "A defendant cannot be held liable for the defective or dangerous condition of property which it [does] not own, possess, or control." (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653]; see also *Alcaraz, supra,* 14 Cal.4th at p. 1162 [quoting the same language with approval].) Undisputed evidence establishes that respondents did not own, or have legal possession of, the planting strip containing the tree and the brick path. Nevertheless, Contreras contends summary judgment was improper because the evidence is sufficient to raise a triable issue of fact whether respondents controlled the city-owned planting strip and thus owed her a duty of care under the rule of *Alcaraz.*

In *Alcaraz, supra,* 14 Cal.4th 1149, our Supreme Court held that a landowner who exercises control over an adjoining strip of land has a duty to protect or warn others entering the adjacent land of a known hazard there. (*Id.* at pp. 1170-1171.) This duty arises even if the person does not own or exercise control over the hazard and even if the person does not own the abutting property on which the hazard is located. (*Id.* at pp. 1155, 1156.) In *Alcaraz,* the plaintiff sued his landlords for injuries he suffered when he stepped into an uncovered water meter box embedded in an approximately two-foot-wide strip of lawn adjacent to the defendants' property. (*Id.* at p. 1153.) The two-foot-wide strip of lawn, located between the sidewalk and the front edge of defendants' property, was part of a city-owned, ten-foot-wide strip of land that extended from the curb to the defendants' property line. (*Id.* at pp. 1153-1154.) The city-owned strip of lawn in which the meter box was located was contiguous with and indistinguishable from the rest of the defendant's lawn. (*Id.* at p. 1170.) The evidence established that the defendants owned neither the meter box nor the land on which the meter box was located. (*Ibid.*) Nevertheless, the evidence showed the defendants maintained the entire lawn from the defendants' property line to the sidewalk, including that portion of the lawn located within the city-owned strip of land, and that, subsequent to the plaintiff's alleged injury, defendants constructed a fence that bordered the sidewalk and enclosed the entire lawn in front of their property, including the two-foot-wide strip owned by the city. (*Id.* at p. 1154.) Further, another tenant provided a declaration stating that he

told the defendants on several occasions that the cover of the meter box was either broken or missing.[10] (*Ibid.*)

The *Alcaraz* court concluded that such evidence was "sufficient to raise a triable issue of fact as to whether defendants exercised control over the strip of land containing the meter box and thus owed a duty of care to protect or warn plaintiff of the allegedly dangerous condition of the property." (14 Cal.4th at p. 1170, fn. omitted.) The court considered the evidence sufficient to suggest the "defendants treated a portion of this strip of land as if they did own it, maintaining a lawn that spanned the property line and that rendered part of the land owned by the city indistinguishable from that owned by [the] defendants, and (subsequent to plaintiff's injury) demonstrated their possession of this land by constructing a fence enclosing the narrow strip containing the meter box." (*Ibid.*)

Nevertheless, it is clear from *Alcaraz* that simple maintenance of an adjoining strip of land owned by another does not constitute an exercise of control over that property. Although evidence of maintenance is considered "relevant on the issue of control," the court limited its holding by stating that "the simple act of mowing a lawn on adjacent property (or otherwise performing minimal, neighborly maintenance of property owned by another) generally will [not], standing alone, constitute an exercise of control over

---

[10]Although it did not analyze the issue in detail, the *Alcaraz* court repeatedly mentioned and appeared to rely on evidence of "actual notice" of the existence of a hazard as a factor in determining the issues of the defendant's "control" of the adjoining property and concomitant "duty" to warn or protect third parties. (See 14 Cal.4th at pp. 1156-1157 ["possessor of land who knows of the hazard" on adjacent property has duty to erect barrier or warn of danger]; at p. 1157 [defendant with "actual notice" of hazard on adjoining property has duty to warn or protect third parties]; at p. 1161 [defendant may be held liable where plaintiff is injured in portion of defendant's fenced backyard which is owned by another and contains a "latent dangerous condition known to the defendant"]; at p. 1170 [simple mowing of neighbors' property is insufficient to establish control so as to give rise to duty to warn or protect members of the public from "known dangers" on that property]; *id.* at p. 1172 (con. opn. of Mosk, J.) [question of fact re "control" is established, inter alia, by fact that complaints about broken meter box on adjoining land had been communicated to defendant].) The *Alcaraz* court also discussed *Hamilton* v. *Gage Bowl, Inc.* (1992) 6 Cal.App.4th 1706 [8 Cal.Rptr.2d 819], a case in which the Court of Appeal held that the defendant bowling alley had no duty to warn its customers or to protect them from injuries caused when a defectively mounted sign fell off the wall of an adjacent building, a wall which the defendant did not own but on which the defendant had hung another sign and had previously applied paint to cover graffiti. (6 Cal.App.4th at p. 1713.) The *Alcaraz* court did not disapprove *Hamilton* but, rather, distinguished it, saying there was no duty in the latter case because the defendant had no "actual notice" of the dangerous condition of the sign on the adjacent building. (14 Cal.4th at p. 1157.) Thus, it appears the duty recognized in *Alcaraz* is limited to hazards on adjacent property of which the defendant landowner is actually aware or should be aware because of "actual notice."

[the] property . . . ." (14 Cal.4th at p. 1167.) Besides maintaining the adjacent lawn owned by the city, the defendants in *Alcaraz* constructed a fence enclosing this narrow strip of land after the plaintiff's alleged injury. (*Id.* at p. 1154.) The court considered such enclosure "highly relevant" because "[i]t is obvious that the act of enclosing property with a fence constitutes an exercise of control over that property." (*Id.* at p. 1167.) The court concluded that the evidence went beyond simple neighborly mainte-nance and, thus, was sufficient to raise a triable issue of fact as to control. (*Id.* at p. 1170.)[11]

The *Alcaraz* court's discussion of two "analogous" federal circuit court cases also makes clear that evidence beyond "neighborly maintenance" is required to support a finding of control. In *Husovsky* v. *United States* (D.C. Cir. 1978) 590 F.2d 944 [191 App.D.C. 242] (*Husovsky*), the plaintiff was injured by a fallen tree which had stood on land the defendant maintained but did not own. (*Id.* at p. 947.) But the evidence of control in that case went well beyond mere maintenance; it included an agreement between the defend-ant and the landowner regarding the use of the land, and the placement and maintenance of markings bearing the defendant's insignia on that land. (*Id.* at p. 953.) Indeed, the landowner had agreed to preserve the " ' "natural, park-like character," ' " of its land such that it would be maintained in a " 'wooded state indistinguishable from contiguous . . . parkland . . .' " owned by the defendant. (*Alcaraz*, *supra*, 14 Cal.4th at pp. 1160-1161, quoting *Husovsky*, *supra*, 590 F.2d at p. 949.) The *Husovsky* court held that such evidence constituted a "notorious and open public display of control" by the defendant. (590 F.2d at p. 953.)

In *Orthmann* v. *Apple River Campground, Inc.* (7th Cir. 1985) 757 F.2d 909 (*Orthmann*), the plaintiff was injured when he dove into a river from land not owned by the defendants. (*Id.* at p. 913.) In addition to evidence of maintenance of the adjoining property, an affidavit stated that subsequent to the incident the defendants, without permission from the landowner, cut down a tree on the land from which the plaintiff dove. (*Ibid.*) The *Orthmann* court concluded: "It is possible to infer that the defendants, though they did not own the . . . property, treated it as if they did—the cutting down of the

---

[11]In a concurring opinion, Justice Mosk likewise concluded that because the plaintiff had "produced evidence that [the] defendants hired someone to mow the lawn [and] put up a picket fence after the accident," he had "offered enough evidence of defendants' control of the premises to raise a triable factual question regarding their liability for his injury." (*Alcaraz*, *supra*, 14 Cal.4th at pp. 1171-1172 (con. opn. of Mosk, J.).)

tree after the accident being a dramatic assertion of a right normally associated with ownership or at least . . . possession." (*Ibid.*)[12]

In the present case, there is no such "dramatic assertion of a right normally associated with ownership or . . . possession" of the land on which Contreras was allegedly injured. Although respondents denied "maintaining" the tree in the city-owned planting strip, they admitted their regular trimming of the tree and sweeping of fallen leaves on the brick path. There was also undisputed evidence that respondent Boehler did some "gardening" in the planting strip. But this evidence by itself suggests nothing more than "neighborly maintenance" of the city-owned planting strip. (*Alcaraz, supra,* 14 Cal.4th at pp. 1167, 1170.) Standing alone, such evidence cannot support a finding of control over that property. (*Ibid.*)

Contreras places great emphasis on additional evidence that, during her deposition, respondent Boehler referred to the tree and the brick path in the planting strip as "our" tree and "our" brick path, suggesting that this evidence shows respondents "exercised dominion and control" over the planting strip.[13] Contreras also cites Bedrick's declaration, in which he claimed he had never seen City workers maintaining the planting strip, thereby suggesting the planting strip was by custom maintained by residents on Kentucky Avenue. This evidence *does not undermine our conclusion.* What *Alcaraz, Husovsky,* and *Orthmann* share, and what the instant case lacks, is evidence that the defendant took affirmative action to preclude or limit the adjoining landowner's control of, or ability to control, its own property such that it is fair and reasonable to hold the defendant (whether solely or jointly with the neighbor) responsible for injuries that may occur on the adjacent property. The conduct of the defendant landowners in each of those cases was also a "notorious and open public display of control" over adjacent property, such that members of the general public might reasonably rely on the *apparent* owner to warn or protect them from known hazards thereon. (*Husovsky, supra,* 590 F.2d at p. 953; see also *Alcaraz, supra,* 14 Cal.4th at p. 1167, quoting *Lofstad* v. *Murasky* (1907) 152 Cal. 64, 69 [91 P. 1008] [construction of fence enclosing city-owned strip is analogous to act of adverse possession by appropriation of land "such as will convey to the

---

[12]The *Alcaraz* court's application of the reasoning in *Husovsky* and *Orthmann* to a hypothetical further illustrates the point: "[W]here a plaintiff is injured in a defendant's fenced backyard by a latent dangerous condition known to the defendant[,] . . . the defendant could not escape liability merely by establishing that the fence was not located on the property line and that a neighbor, rather than the defendant, actually held title to the land containing the dangerous condition." (*Alcaraz, supra,* 14 Cal.4th at p. 1161.)

[13]Contreras neither provides nor cites to any evidence that Boehler's subjective beliefs about the adjoining property were ever communicated to her, or to any other member of the general public, prior to the commencement of this litigation.

community where it is situated visible notice that the land is in his exclusive use and enjoyment"]; *Orthmann, supra,* 757 F.2d at p. 913 ["the cutting down of the tree after the accident [was] a *dramatic assertion* of a right normally associated with ownership or at least . . . possession" (italics added)].)

In this case, by contrast, the brick walkway on which Contreras was allegedly injured was located in a parking strip that was separated from respondents' property both by the fence that enclosed their front yard and the public sidewalk. In addition, there is no evidence the respondents knew of the hazard allegedly posed by the brick walkway. Most fundamentally, however, there was no showing of any assertive, controlling conduct equivalent to the fencing of the city-owned property in *Alcaraz,* or the cutting down of the tree in *Orthmann,* or the agreement allowing the defendant to post signs and dictate the "park-like" vegetation of adjoining land in *Husovsky.* Instead, the evidence in this case suggests nothing more than "minimal, neighborly maintenance" of the city-owned parking strip adjacent to respondents' property. (*Alcaraz, supra,* 14 Cal.4th at p. 1167.) Without more, the evidence here is insufficient to raise a triable issue of fact whether respondents controlled the property. (*Id.* at pp. 1167, 1170.) Thus, we hold as a matter of law that the respondents did not owe a duty to warn or prevent harm to Contreras under the rule of *Alcaraz.*[14]

## IV. *Contreras's Other Theories of Liability*

Contreras also claims that respondents are liable for her injuries because the planting strip contains a hazardous alteration that benefits their property, relying on the line of cases following *Sexton v. Brooks, supra,* 39 Cal.2d 153. Contreras did not genuinely dispute respondents' claim that they did not construct any alterations to the planting strip, including the building of the brick path and the planting of the tree.[15] Nevertheless, she contends respondents are liable for a hazardous alteration on the abutting sidewalk or planting strip benefiting their property. Contreras provided as evidence photographs of the planting strip in front of respondents' property as well as those in front of their neighbors' property. Based on these photographs, she

---

[14]At oral argument, appellant emphasized that *Alcaraz* treated the issue of "control" as a question of fact and argued, in effect, that the trial court can never determine the issue of "duty" as a matter of law so long as there is some evidence relevant to the issue of "control." As we have noted, we do not read *Alcaraz* as precluding summary judgment where the evidence of "control" is nothing more than evidence of "neighborly maintenance" of the adjoining land by the defendant(s). This is true, a fortiori, where the summary judgment is entered on what amounts to a set of stipulated facts.

[15]As we have noted above, she argued otherwise during the hearing on the respondents' summary judgment motion, and raises the same argument on appeal.

argued that an alteration to the planting strip was made and that the alteration benefits respondents' property. She presented no other supporting evidence. She conceded during oral argument at the summary judgment hearing that she could not find any city records or any other evidence indicating who build the brick path or when it was built.

"[A]n abutting owner is liable for the condition of portions of the public sidewalk which he has altered or constructed for the benefit of his property *and which serve a use independent of and apart from the ordinary and accustomed use for which sidewalks are designed.* [Citations.] The duty to maintain such portions of the street runs with the land [citation], and a property owner cannot avoid liability on the ground that the condition was created by his predecessors in title. [Citations.]" (*Sexton* v. *Brooks, supra,* 39 Cal.2d at p. 157, italics added; *Peters* v. *City & County of San Francisco* (1953) 41 Cal.2d 419, 423 [260 P.2d 55]; *City & County of S.F.* v. *Ho Sing* (1958) 51 Cal.2d 127, 129 [330 P.2d 802]; see also BAJI No. 8.50.) Such a duty usually arises in cases involving traps on sidewalks, including " 'coal holes, meter boxes, and other devices of similar character located in the sidewalk which benefit the abutting owner and are located where the general public is likely to walk. . . .' " (*Alcaraz, supra,* 14 Cal.4th at p. 1172 (conc. opn. of Mosk, J.).) However, liability under this theory does not arise upon a mere finding that the abutting owner derives a benefit from the alteration. The additional factors of whether the alteration serves a use independent of and apart from the ordinary and accustomed use of the sidewalk and the degree of exclusivity of such use must be considered. (*Seaber* v. *Hotel Del Coronado* (1991) 1 Cal.App.4th 481, 490-491 [2 Cal.Rptr.2d 405] (*Seaber*).)

In *Seaber,* after leaving the defendant's premises, the plaintiff's husband was killed on a public crosswalk located on public property adjacent to the defendant's property. (1 Cal.App.4th at pp. 484-485.) The crosswalk was installed at the request of the defendant. (*Id.* at p. 485.) The court also found that the defendant specially benefited from the crosswalk, which provided a convenient crossing for its employees and patrons. (*Id.* at p. 490.) Nevertheless, the court concluded that, since the crosswalk was also available for use by the public, any special benefit to the defendant was not exclusive. (*Id.* at p. 491.) The court explained, "The significance of the degree of exclusivity is that proportionately, the greater the exclusivity of use, the more an improvement benefits solely the adjoining property and the more reasonable it is to impose upon the landowner a duty to maintain the improvement in a reasonably safe condition." (*Ibid.*) Moreover, the court found that the crosswalk did not serve a use independent of and apart from its ordinary and accustomed use as a public walkway. (*Ibid.*) Thus, the court concluded that "It would be unfair to impose upon the [defendant] a duty to maintain the

public crosswalk in a reasonably safe condition simply because some of the [defendant's] patrons may have used the crosswalk with its knowledge."[16] (1 Cal.App.4th at p. 492.)

■ In this case, the alleged hazard is not any kind of trap; it is the condition of the brick walkway itself, namely, it was allegedly too slippery. More importantly, although it would be possible for a reasonable trier of fact to conclude that the brick walkway confers a benefit upon respondents by providing access from the curb to respondents' property, this benefit is not exclusive. The general public, including Contreras, had access to it as well. Furthermore, the brick path did not serve a use independent of and apart from the ordinary and accustomed use for which it was designed, namely, as a public walkway between the curb and the sidewalk. Thus, without evidence of an exclusive and uncommon use of the brick path by respondents, Contreras has failed to raise any triable issue of fact whether respondents owed her a duty under *Sexton* v. *Brooks, supra,* 39 Cal.2d 153 and its progeny.

Relying on *Low* v. *City of Sacramento, supra,* 7 Cal.App.3d 826 and *Jones* v. *Deeter, supra,* 152 Cal.App.3d 798, Contreras further contends that respondents may be held liable for her injuries because they maintained the planting strip by custom. Her reliance on these cases is misplaced. It is clear from the recent ruling in *Alcaraz, supra,* 14 Cal.4th 1149, these cases should be analyzed under the premises liability principle articulated there: A landowner's duty to warn or prevent injury from known hazards on abutting property derives from ownership, possession or control, not mere maintenance.[17] (*Id.* at p. 1170.) Thus, our discussion of *Alcaraz*'s application to the present case is dispositive of this issue.

Finally, Contreras contends that respondents owed her a duty under the "Good Samaritan Rule." She relies on *Williams, supra,* 216 Cal.App.3d 510, in which the Court of Appeal stated in dictum that the holding in *Low* v. *City*

---

[16]The *Seaber* court also ruled that "because the [defendant] lacked effective *control* over the crosswalk, it cannot be shackled with a duty to warn pedestrians of the dangerous risk the crosswalk posed." (1 Cal.App.4th at p. 492, italics added, fn. omitted.) This conclusion is consistent with our application of the principles articulated in *Alcaraz, supra,* 14 Cal.4th 1149.

[17]The Supreme Court specifically explained *Low*'s reasoning in light of the principles set forth in *Alcaraz.* (*Alcaraz, supra,* 14 Cal.4th at p. 1159.) Further, *Low* can be distinguished in that the court there dealt with the liability of two public entities, each of which had underlying legal claims to the property on which the plaintiff's injury occurred. (7 Cal.App.3d at p. 834.) This case, on the other hand, concerns the liability of private property owners; there is also no evidence that respondents have any legal claims to the city-owned planting strip. Moreover, though not mentioned in the *Alcaraz* opinion, the *Jones* court's historical pattern approach, upon which Contreras relies, has been criticized in *Williams.* (See *Williams, supra,* 216 Cal.App.3d at pp. 519-520.)

of Sacramento, *supra*, 7 Cal.App.3d 826 is "consistent with [the] general rule that a person may be held liable for negligence where he undertakes to act without an affirmative duty to do so but acts without due care." (*Williams*, *supra*, 216 Cal.App.3d at p. 520.) As discussed above, respondents may have a duty under the Berkeley City ordinances to maintain the planting strip, but this duty does not extend to Contreras. Further, liability under a Good Samaritan theory would have to be based on respondents' conduct in maintaining the planting strip. To thus impose liability for acts of "neighborly maintenance" would be inconsistent with the rule of *Alcaraz*, *supra*, 14 Cal.4th at pages 1167 and 1170. Thus, Contreras's final contention fails.

CONCLUSION

For all of the forgoing reasons, the summary judgment is affirmed. The parties shall bear their own costs.

Parrilli, J., and Walker, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 25, 1998.