Filed 12/4/23  Jones v. Hudson McDonald Properties CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GEZEL MAZIDUS JONES,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>HUDSON MCDONALD<br>PROPERTIES, INC.,<br><br>        Defendant and Respondent. | A163809<br><br>(Alameda County<br>Super. Ct. No. RG18925478) |

Plaintiff Gezel Mazidus Jones slipped and fell on a wet metal utility vault cover located in the driveway apron of a sidewalk in front of a parking garage that defendant Hudson McDonald Properties, Inc. (Hudson) manages for its tenants, which includes Jones.  Jones filed a complaint against Hudson for premises liability.  After the trial court granted Hudson's motion for summary judgment, Jones appealed.

We conclude that Jones did not raise a triable issue of material fact as to whether Hudson owed her a duty of care to protect her against the allegedly dangerous condition of the utility vault cover.  Accordingly, we affirm.

## I.  BACKGROUND

At the time of the slip and fall incident, Jones lived at an apartment complex in Berkeley that was managed by Hudson and had lived there for

1

over ten years.  Hudson also managed a nearby parking garage for tenants of the apartment complex.  The entrance to the parking garage has two gates. Tenants can open the gates by using a remote (or "clicker") from their car or by swiping a key fob near a "key reader" box adjacent to the gates.

The undisputed facts show that shortly after midnight on March 13, 2018, Jones returned home from Kaiser Hospital.  It was raining.  She parked her vehicle in the driveway of the parking garage.  Her clicker was not working, so to open the garage gates, she exited her vehicle to swipe her key fob in front of the key reader.  As she returned to her vehicle, she slipped and fell on a metal embossed utility vault cover located in the driveway apron.  The parties agree that the utility vault cover did not present a tripping hazard.

Several months later, Jones sued Pacific Gas and Electric Company and several Doe defendants for premises liability.  In an amended complaint, Jones identified Hudson as a Doe defendant.  The amended complaint asserted that Hudson is liable for maintaining "premises near or adjacent to" the parking garage in a dangerous condition, which proximately caused Jones to "trip and fall" on the "sidewalk surface while walking."

Hudson moved for summary judgment.  It argued that it did not have a duty to inspect, maintain, or repair the subject utility cover because it did not own or control the utility cover.  Hudson also argued that Jones could not establish that it caused her injuries or that it had notice of the allegedly dangerous condition of the utility cover.  Finally, it argued that the utility cover was not defective, and even if it was, the defect was trivial as a matter of law.

Hudson supported its motion with excerpts from the deposition of Jones and declarations from its resident manager and a slip and fall expert,

2

Hanhtrinh Le. Le conducted "slip resistance testing" on the utility cover using an "English XL Variable Incidence Tribometer," a device used to measure the slip resistance of walkway surfaces. Le concluded from the testing that the utility cover did not present a "significant slip risk in dry or wet conditions," as there was a less than 6% probability of slipping while walking on the utility cover.

In opposition, Jones argued there were triable issues of material fact regarding whether Hudson fulfilled its duty of care to her because of evidence showing that Hudson was aware that tenants had occasional problems with the parking garage remote controls, requiring them to get out of their car and swipe a key fob to the key reader box. Jones contended that she "would not have encountered the slippery utility cover had Defendant fulfilled its duty of care with respect to the *process* by which tenants were to open the garage gate when seeking to enter the parking garage." (Italics added.) She also argued that there was a triable issue of material fact regarding whether Hudson had actual and constructive notice of the dangerous condition and whether the "slippery condition" of the utility cover was trivial as a matter of law.

The declaration of Jones's slip and fall expert, Zachary M. Moore, showed that he also conducted wet slip resistance testing on the utility cover, and found that its "average slip resistance index," when accounting for the slope of the driveway, was 0.30, which was below the "industry standard" of 0.50. He concluded that the utility vault cover constituted a "substantial" slip hazard when wet. Jones also supported her opposition with the declaration of Bahman Mehdizadeh, a property manager and landowner, who stated that the "industry custom and practice requires landowners and

3

property managers to provide tenants with a safe means of ingress and egress into parking garages/facilities."

Hudson filed numerous objections to the Moore and Mehdizadeh declarations. It also filed a reply declaration from Le, who claimed that Moore, in forming his opinion, ignored the "margin of safety" included in the 0.5 industry safety standard he relied on.

Following briefing and a hearing, the trial court sustained 21 of Hudson's 27 objections to the Moore declaration. It also sustained the objections to the Mehdizadeh declaration as irrelevant. The court granted summary judgment on the grounds that Hudson did not own or control the utility vault cover that Jones slipped on and that the alleged defect in the utility vault cover was trivial as a matter of law and thus did not constitute a dangerous condition.

Following the entry of judgment, Jones timely appealed.

## II. DISCUSSION

The elements of a premises liability claim such as the one at issue in these proceedings are: a legal duty of care; breach of that duty; and proximate cause resulting in injury. (See *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) Here, Jones argues that the trial court erred in granting Hudson's summary judgment motion on the ground that Hudson did not owe her a duty of care with respect to the utility cover because it did not own or control the utility cover. Additionally, Jones asserts she raised a triable issue of material fact as to whether the utility cover presented a dangerous condition.

Because a landowner or occupier may have a limited duty of care with respect to a hazardous condition on adjacent land where the owner or occupier had actual notice of the hazard (*Alcaraz v. Vece* (1997) 14 Cal.4th

4

1149, 1157 (*Alcaraz*)), and because the parties and the trial court did not expressly address how notice affected the scope of Hudson's duty of care in that context, we asked for supplemental briefing on the issue.[1] (Code Civ. Proc., § 437c, subd. (m)(2).) In its supplemental brief, Hudson argues that no triable issue of material fact exists as to its lack of notice of the alleged defect in the utility cover, and that a landowner or occupier does not owe a duty of care with respect to an "unknown" and "latent" condition on land it does not own or control unless the owner or occupier has created the hazard. Accordingly, it contends, it did not owe Jones a duty of care with respect to the utility cover because it did not create the "slipping hazard." Jones's supplemental brief did not address the questions presented.

We agree with Hudson that its lack of control and ownership over the utility cover and its lack of notice of the allegedly dangerous condition of the utility cover are dispositive as to the scope of the duty of care it owed Jones. We therefore affirm.

---

[1] "Even if the grounds entitling the moving party to a summary judgment were not asserted in the trial court, we must affirm if the parties have had an adequate opportunity to address those grounds on appeal." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.) Accordingly, we requested supplemental briefing from the parties as to (1) whether there was a triable issue of material fact regarding Hudson's notice of the dangerous condition of the utility vault and (2) the scope of a land possessor's duty of care with respect to a latent property condition which is on adjacent land not owned or controlled by the land possessor and which is unknown to the land possessor, citing *Alcaraz, supra*, 14 Cal.4th 1149 and *Hamilton v. Gage Bowl, Inc.* (1992) 6 Cal.App.4th 1706 (*Hamilton*), which we discuss in more detail below. (See Code Civ. Proc., § 437c, subd. (m)(2).) We also note that Hudson raised the issue of its lack of actual and constructive notice of the dangerous condition of the utility vault in the trial court, albeit in the context of arguing that it did not breach any duty of care it owed Jones.

### A. Basis for Summary Judgment and Standard of Review

Summary judgment is properly granted if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant makes this showing, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

A defendant moving for summary judgment bears the initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "A prima facie showing is one that is sufficient to support the position of the party in question. . . . No more is called for." (*Id.* at p. 851.) A defendant moving for summary judgment against a plaintiff who bears the burden of proof by a preponderance of the evidence must present evidence that would require a reasonable trier of fact not to find any underlying material fact more likely than not. (*Ibid.*)

On appeal, we independently review an order granting summary judgment, " ' " 'considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.) Moreover, "[w]e must affirm a summary

6

judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Garrett v. Howmedica Osteonics Corp., supra*, 214 Cal.App.4th at p. 181.)

## B. Jones's Evidentiary Challenges

Jones argues that the trial court committed prejudicial error by sustaining almost all of Hudson's objections to the declarations of Moore and Mehdizadeh. Jones does not present arguments specific to most of the objections, but rather generally states that the trial court abused its discretion in ruling on the objections. In support of this argument, she contends that the various theories Hudson asserted in support of its objections—for example, lack of foundation, hearsay, inadmissible speculation—were without merit, and cites some examples.

It is not enough for Jones to assert generally that none of these theories provide a basis for objecting to her evidence. "One cannot simply say the [trial] court erred, and leave it up to the appellate court to figure out why." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52, citing Cal. Rules of Court, rule 8.204(a)(1)(B).) Nor can we be expected to search the record for support for Jones's wide sweeping contentions. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546.) Although Jones makes specific arguments for why the trial court erred in sustaining three of Hudson's objections, those objections were directed at evidence concerning whether the utility cover presented a dangerous condition, an issue we need not reach in this appeal.

On this record and based on the briefs before us, we decline to address each of the objections sustained by the trial court to determine whether the

7

ruling was correct. Instead, to the extent that we find that evidence to which an objection was sustained is relevant to our holding, we will address the evidentiary objections in the sections that follow.

## C. Hudson Met Its Initial Burden by Presenting Evidence Showing It Did Not Owe Jones a Duty Regarding the Utility Cover.

In reviewing a ruling on summary judgment, we first identify the issues framed by the pleadings, "since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading." (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.)

Jones's amended complaint broadly asserted that Hudson is liable on a premises liability theory because it negligently "maintained, controlled, possessed, repaired, inspected, operated, designed, built, managed and cleaned certain premises located near and adjacent to" the parking garage "in a dangerous condition" so as to cause Jones to "trip and fall on the sidewalk surface . . . ." The complaint further alleged that Hudson knew or should have known about the dangerous condition in "adequate time for a reasonable [sic] prudent person to have corrected the dangerous condition, or, to have properly warned persons" of the condition.

It is undisputed that Jones was injured as a result of slipping and falling on a wet utility vault cover located within the driveway entrance to the parking garage managed by Hudson. Hudson argued that Jones's premises liability claim fails as a matter of law because it had no duty to inspect, maintain or repair a utility cover it did not own or control and no notice of the alleged defect in the utility cover. To meet its initial summary judgment burden, Hudson presented evidence that it received no complaints

8

regarding the condition of the driveway, that there was no apparent defect in the utility cover, that it did not own or control the utility cover, and that it took no action regarding the premises "adjacent to" the parking garage that contributed to the allegedly dangerous condition of the utility cover. This evidence satisfies Hudson's initial burden to negate the duty element of Jones's premises liability claim.

Every person has a duty to exercise, "in the management of his or her property or person," reasonable care for the safety of others. (Civ. Code, § 1714, subd. (a); see also *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.) "Those who own, possess, or control property generally have a duty to exercise ordinary care in managing the property in order to avoid exposing others to an unreasonable risk of harm." (*Annocki v. Peterson Enterprises, LLC* (2014) 232 Cal.App.4th 32, 37.) The existence and scope of a duty is a question of law for the court to decide. (*Barnes v. Black* (1999) 71 Cal.App.4th 1473, 1478.)

"The following factors determine the scope of the landowner's duty of care under the relevant circumstances: the foreseeability of harm to the injured party; the degree of certainty he or she suffered injury; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and the consequences to the community of imposing a duty of care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk involved." (*Barnes v. Black, supra*, 71 Cal.App.4th at p. 1478, citing *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*)[2].)

---

[2] *Rowland* "was partially superseded by statute on a different issue as stated in *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 722, . . .

"In most instances, where there is no control over the premises, there is no duty to exercise reasonable care to prevent injury. [Citation.] Generally, 'a landowner has no right to control and manage premises owned by another.' [Citation.] Thus, usually a landowner has no duty to prevent injury on adjacent property. [Citations.] Similarly, an adjacent landowner has no duty to warn of dangers outside of his or her property if the owner did not create the danger." (*Annocki v. Peterson Enterprises, LLC, supra*, 232 Cal.App.4th at p. 37; see also *Lopez v. City of Los Angeles* (2020) 55 Cal.App.5th 244, 256 ["courts have identified two situations in which an owner or occupier of private land has engaged in affirmative or positive action sufficient to hold them liable for a hazard located on abutting, publicly owned property: (1) when the owner or occupier has created that hazard . . . , or, (2) . . . when the owner or occupier has 'dramatic[ally] assert[ed]' dominion and control" over the abutting property].)

In *Hamilton, supra*, 6 Cal.App.4th 1706, for example, the plaintiff was injured in the defendant's parking lot when an adjoining property owner's sign affixed to that party's wall fell on her. (*Id.* at p. 1708.) Without asking for permission from the adjoining property owner, the defendant had painted a "small portion of the . . . wall to cover graffiti" and had refurbished a different sign on the wall which advertised the defendant's business. (*Id.* at pp. 1709–1710.) The plaintiff sued the defendant for premises liability. (*Id.* at p. 1708.) The defendant moved for a nonsuit, which the trial court granted. (*Id.* at p. 1710.)

---

disapproved on a different issue in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 . . . ." (*Smith v. Freund* (2011) 192 Cal.App.4th 466, 473, fn. 5.)

10

The Second District affirmed, rejecting the plaintiff's argument that the defendant had exercised sufficient control over the wall of the adjacent building to justify imposition of a duty on the defendant to inspect the sign. (*Hamilton, supra*, 6 Cal.App.4th at pp. 1712–1713.)  The court reasoned that the dangerous condition of property was the sign itself, "or more accurately, the means by which the sign was affixed." (*Ibid.*)  Absent any evidence that the defendant exercised control over the sign that fell, the court concluded that the defendant had *no duty to discover* the dangerous condition of the sign.  (*Id.* at pp. 1712–1713.)  The court considered the *Rowland* factors, noting that the accident was not foreseeable because the appearance of the sign did not give any indication that it was improperly fastened to the wall, and that the closeness of the connection between the defendant's conduct and the plaintiff's injuries was lacking because the facts did not suggest that the defendant was aware of the possibility that the sign would come loose and fall into its parking lot below.  (*Id.* at pp. 1713–1714; see also *Marshall v. United Airlines* (1973) 35 Cal.App.3d 84, 90–91 [airline had no duty to warn where defect of the airport stairs it did not own or control was hidden].)

Although our high court later held that the "duty to maintain land in one's possession in a reasonably safe condition exists even where the dangerous condition on the land is caused by an instrumentality that the landowner does not own or control[,]" it distinguished *Hamilton* on the ground that the landlord defendants in the case before it had "actual notice" of the defective condition of a meter box it did not own or control but which was located on a strip of land the defendants may have controlled.  (*Alcaraz, supra*, 14 Cal.4th at p. 1157.)  "The issue, therefore, is not whether defendants had a duty to inspect or repair the meter box, but whether, in light of their alleged knowledge of the dangerous condition of the meter box,

11

they had a duty to persons entering the strip of land to protect them from, or warn them of, the hazard." (*Ibid.*; see also *Contreras v. Anderson* (1997) 59 Cal.App.4th 188, 198, fn. 10 ["it appears the duty recognized in *Alcaraz* is limited to hazards on adjacent property of which the defendant landowner is actually aware or should be aware because of 'actual notice' "].) The court noted that if the defendant in *Hamilton* had received "actual notice" that the sign hanging over its parking lot was in danger of falling, it would have had a duty to persons using its parking lot to warn them of or protect them from the dangerous sign. (*Alcaraz*, at p. 1157.)

Here, Hudson's evidence shows that it did not own or control the utility cover, and thus it had no duty to inspect it for defects and discover its allegedly dangerous condition. (See *Hamilton, supra*, 6 Cal.App.4th at p. 1713.) It is further undisputed that the driveway "remained substantially the same for the entire 10 years" of Jones's tenancy, that Hudson had not conducted any repairs or work "to the area outside of the parking garage, inclusive of the utility cover," and that Jones did not complain about the driveway. Hudson's resident manager also stated in her declaration that she had not received any complaints about a dangerous condition on the sidewalk, driveway, or utility cover. Photographs confirm that the purported defect in the utility cover—its unsafe slip resistance—is not apparent and that the driveway is an ordinary driveway.[3] Together, this evidence demonstrates that Hudson did not have actual notice of the alleged defect in

_____

[3] Both parties presented as evidence photographs of the utility cover and the driveway. In determining that the alleged defect in the utility cover is not overt, we rely mainly on the photographs provided by Jones, as they are of higher quality. Gaps in a party's evidentiary showing may be filled by the opposing party's evidence. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 751.)

the utility cover such that it would have a duty to individuals coming onto its premises to warn them of, or protect them from, the hazard. (See *Alcaraz, supra,* 14 Cal.4th at p. 1157.) This evidence also indicates that Hudson did not build or maintain the premises it owned or controlled in a way that created the purported slipping hazard. Hudson therefore met its initial burden to make a prima facie showing negating the duty of care element of Jones's premises liability claim.

### D. Jones Failed to Present Evidence Establishing a Triable Issue of Material Fact.

On appeal, Jones does not dispute that Hudson did not own or control the utility cover and did not cause the allegedly unsafe slip resistance of the utility cover. Nonetheless, she argues Hudson owed a duty of care with respect to the adjoining property because it knew its tenants would use the driveway to occasionally access the key reader as a means of ingress and egress to the garage and could encounter the utility cover.[4] As we will explain, this contention fails to create a triable issue of material fact.

---

[4] During oral argument, Jones's counsel argued that the Berkeley Municipal Code created a legal duty for Hudson to inspect and maintain the utility vault cover. Jones did not raise the Berkeley Municipal Code until her supplemental brief, and even then, she presented no cogent argument that the cited provision imposes liability on Hudson for injuries resulting from defects in the utility cover. We therefore treat the point as forfeited. (See *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 ["[c]ourts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge"]; *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 775 [issue deemed waived where it is not supported by "argument, discussion, analysis, or citation to the record"].) Further, Jones's characterization of that provision is not fully accurate as it requires an owner of real property to maintain a sidewalk in good repair so as not to endanger persons using the sidewalk but does not and could not alter the nature of the

13

### 1. *Hudson's Notice of the Alleged Defect in the Utility Cover*

In the trial court, Jones argued that there was a triable issue of material fact regarding whether Hudson had actual or constructive notice of the dangerous condition of the utility cover based on Moore's declaration, in which he concluded that Hudson "knew or should have known of the unsafe condition" of the utility cover. Moore, in turn, relied on evidence that Hudson conducted daily inspections of the parking garage and that it knew there were occasional problems with the remote garage opener that required tenants to exit their vehicles on the driveway where the utility vault was located.

However, this evidence does not establish that Hudson had notice of the purportedly unsafe slip resistance of the utility cover when wet, only that Hudson knew that tenants may encounter the utility cover. This is insufficient to demonstrate that Hudson was aware of or should have been aware of "an unreasonable risk of harm" or "the existence of a dangerous condition." (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1210.) As previously explained, the allegedly unsafe slip resistance of the utility cover when wet was not apparent from a visual examination of the cover, a fact which Jones concedes in her reply brief. Moreover, the trial court properly sustained Hudson's objections to Moore's opinions regarding notice, as they amount to improper legal conclusions. (See, e.g., *Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 348.)

### 2. *Hudson's Duty of Care*

Turning to Jones's arguments regarding the duty of care element of her premises liability claim, she contends that a triable issue of fact exists as to

ownership interests in the utility vault, nor does it negate the fact that Hudson had no notice of the dangerous condition of the utility cover.

14

Hudson's duty of care because Hudson "knew that its tenants would encounter that surface when accessing the parking garage," and because the utility cover is "located on premises which [Hudson] provided to its tenants as a means of ingress and egress to the parking garage." She notes that if a resident's remote control was not working, the resident would have to exit their vehicle and use the key reader on the right-side of the building, meaning the resident "could potentially" step on the utility cover, and that Hudson knew the remote controls did not always function. In her trial brief, Jones suggested that Hudson's duty of care required it to change the type of remote control or key reader it used.[5]

In response, Hudson argues that it owed no duty of care regarding the utility cover based in part on the *Rowland* factors. As previously mentioned, those factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct," and "the extent of the burden to the defendant . . . of imposing a duty to exercise care with resulting liability for breach . . . ." (*Rowland, supra*, 69 Cal.2d at p. 113.) We conclude that Hudson has the better argument.

To begin with, Jones does not support most of her factual assertions with citations to evidence in the record. In a summary judgment appeal, "[a]s with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues

---

[5] The Mehidizadeh declaration was stricken by the trial court as irrelevant. As the declaration constituted impermissible lay opinion, the trial court did not abuse its discretion. (See e.g. *People v. DeHoyos* (2013) 57 Ca.4th 79, 106-107; Evid. Code, §800.)

the appellant claims are present *by citation to the record* and any supporting authority." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116, italics added, disapproved of on another ground as recognized in *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 41–42.)

Moreover, considering the undisputed evidence that Hudson did not have actual notice of the dangerous condition of the utility cover, imposing a duty of care on Hudson in this case simply because it was foreseeable that its tenants would walk on the driveway apron and might step on the wet utility cover would essentially create a rule requiring a landowner or occupier to inspect property it does not own or control to discover latent defects that its visitors might encounter in entering its premises.  We decline to create such a rule, as it would go beyond the limits of any existing case law and would impose potentially boundless liability on landowners and occupiers like Hudson.

Application of the *Rowland* factors support this conclusion.  While it was foreseeable that Jones would be injured if she slipped and fell on the utility cover, it was not foreseeable that such an accident would occur, as nothing in the evidence suggests that Hudson should have been aware of the possibility that the utility cover was unsafe to walk on in the rain.  (See *Hamilton, supra*, 6 Cal.App.4th at pp. 1713–1714.)  The closeness of the connection between Hudson's conduct and Jones's injury is lacking.  Were we to hold Hudson liable in this case, we would be doing so when it did no more than put a standard driveway to its ordinary use.  Hudson's failure to discover and remedy an alleged defective condition of the utility cover when wet is not particularly blameworthy because it had no knowledge of the utility cover's allegedly unsafe slip resistance and no right to conduct tests on

16

a utility cover it did not own or control to determine its slip resistance. And the burden of imposing a duty on landowners to inspect adjacent premises for latent defects would be substantial considering factors of cost and authority to access, examine and remedy the adjacent property. In sum, these factors weigh against the imposition of a duty on Hudson to have inspected the utility cover and discover, and protect tenants from, its unsafe slip resistance when wet.

The cases relied on by Jones are inapposite. *Dudum v. City of San Mateo* (1959) 167 Cal.App.2d 593 and *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139 (*Bonanno*), for example, concern a public entity's placement of a stop sign and a bus stop, respectively. In *Dudum*, the plaintiffs sued the city after they were injured when another defendant collided with their car. (*Dudum v. City of San Mateo, supra,* at p. 595.) They claimed that the stop sign at the intersection where the accident occurred was obscured by a tree. (*Ibid.*) This court reversed summary judgment in favor of the city, rejecting the city's argument that it was not liable because the tree was privately owned. (*Id.* at pp. 595–596, 598.) The court reasoned that the evidence could be construed "to show that the tree obscures the sign only because of the location chosen for the sign by the city." (*Id.* at p. 597.) Similarly, the *Bonanno* court concluded that the public entity could be liable for the dangerous condition created by the location of a bus stop—users would have to cross a dangerous uncontrolled crosswalk to reach the bus stop—noting that the existence of the bus stop and sign attracted patrons, and the bus stop easily could have been moved to a less dangerous location. (*Bonanno*, at pp. 151–152.) However, liability of a public entity for its intentional placement of public property in a way that increases risk because it invites or encourages people into foreseeably dangerous situations

is far removed from the liability of a private landowner for an adjacent danger he or she does not control and is unaware of.

The other public entity cases cited by Jones also involve the presence of known hazardous conditions adjacent to the public entity's property. (See *Branzel v. City of Concord* (1966) 247 Cal.App.2d 68, 75 ["While the City did not maintain or control the power lines, it did maintain the flying field in a location so close to them that in the light of the known use of the field the involvement of the field with the lines could be reasonably anticipated"]; *Jordan v. City of Long Beach* (1971) 17 Cal.App.3d 878, 880–881 [concluding that while the protruding water pipe that allegedly caused plaintiff's fall was located on private property, its location "exposed persons using the [adjacent] city-owned property to a substantial risk of injury"].)

In *Marsh v. City of Sacramento* (1954) 127 Cal.App.2d 721 (*Marsh*), the plaintiff sued the city after he was injured when he fell from the edge of a city sidewalk, which had an 8-foot drop to private property below. (*Id.* at p. 722.) There was no guard rail or anything else to warn persons using the sidewalk or prevent them from falling, and it was undisputed that the city had knowledge of the dangerous condition created by the location of the sidewalk. (*Ibid.*) The Court of Appeal affirmed the judgment in favor of the plaintiff, concluding that the sidewalk itself was in a dangerous condition because "the probability that persons using it might fall or be jostled off was apparent." (*Id.* at pp. 722, 724.)

*Holmes v. City of Oakland* (1968) 260 Cal.App.2d 378 concerned a six-year-old boy who was injured in a railroad right-of-way on a public street near his school. (*Id.* at p. 381.) He appealed a trial court order sustaining the city's demurrer to his complaint on the ground that he failed to state a cause of action against the city. (*Ibid.*) The Court of Appeal held that even if

18

the city did not control the right-of-way, the public street was in a dangerous condition because of its adjacency to "unguarded railroad tracks." (*Id.* at pp. 389, 391.) The court compared the case to *Marsh*, noting that in *Marsh*, liability was held to exist because the city had "ample notice of the unguarded condition and opportunity to remedy it." (*Id.* at pp. 391–392.)

In all these cases, the issue was whether there was a known or apparent " 'dangerous condition' " of public property within the meaning of the Government Code; they did not involve a question of duty under Civil Code section 1714 and did not apply the *Rowland* factors. (*Bonanno, supra*, 30 Cal.4th at p. 144; *Jordan v. City of Long Beach, supra*, 17 Cal.App.3d at p. 882; *Branzel v. City of Concord, supra*, 247 Cal.App.2d at p. 171 & fn. 5; *Marsh, supra*, 127 Cal.App.2d at pp. 722–724; *Holmes v. City of Oakland, supra*, 260 Cal.App.2d at p. 381; *Dudum v. City of San Mateo, supra*, 167 Cal.App.2d at p. 595.)

Finally, Jones cites *Schwartz v. Helms Bakery, Ltd.* (1967) 67 Cal.2d 232, *Johnston v. De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394 (*Johnston*), and *Henderson v. McGill* (1963) 222 Cal.App.2d 256 for the proposition that "the premises" for which a landowner or occupier has a duty of care "may include such means of ingress and egress as a customer may reasonably be expected to use." But again, those cases are inapposite. Each addresses a duty of an invitor to an invitee with respect to a known or readily apparent dangerous condition on property for which some degree of control was exercised by the invitor.

In *Schwartz*, the plaintiff was a four-year-old who was hit by a car at dusk when rushing to a street vendor's truck to buy a doughnut. Knowing the child lived across a busy street, the vendor told the child to meet him " 'up the street.' " The court concluded that street vendors have a high duty of care

19

to children purchasing their wares, and after directing the child where to meet him, a triable question of fact existed as to whether the driver's conduct as the "invitor" was reasonable and whether he had a duty to warn of dangers associated with ingress and egress to his truck. (*Schwartz v. Helms Bakery Ltd., supra*, 67 Cal.2d at pp. 235–240.)

In *Johnston*, the court reversed a judgment of nonsuit favoring a defendant restaurant owner. (*Johnston, supra*, 28 Cal.2d at pp. 396, 402.) Plaintiff was a prospective customer injured when stepping down from an 18-inch wall that separated the property from an adjacent parking lot owned by a third party. The wall bordered a dimly lit common walkway that led to one of the restaurant's entrances but that was not covered by the restaurant owner's lease. (*Id.* at p. 401.) The businesses knew that its patrons frequently used this adjacent parking lot and traveled the informal pathway. Finding evidence that the tenant had installed a neon sign with the name of his restaurant and had connected the sign to the only light placed on the outside wall, the court concluded that the evidence supported a finding that the tenant "had a limited right of control over this portion of the premises" and thus had a duty to warn the plaintiff of the dangerous condition of the walkway. (*Ibid.*)

Finally, *Henderson v. McGill* is also distinguishable because the dangerous condition there—a faucet obviously protruding four to six inches from the ground—was located in an area commonly used as a walkway from the parking lot by patrons to access the coffee shop. Despite the obvious dangerous condition of the faucet, the court found substantial evidence supported the jury's verdict because the shop knew of the condition and invitees could be distracted from seeing it by the business's adjacent window. (*Henderson v. McGill, supra*, 222 Cal.App.2d at pp. 258, 262.)

20

In each of these cases cited by Jones, the invitor knew of a dangerous condition or the dangerous condition was readily apparent. These facts do not exist in this case. In sum, Jones has not demonstrated a triable issue of material fact regarding whether Hudson owed her a duty of care with respect to a latent defect involving the slip-resistance of the utility cover when wet when that utility cover was owned and controlled by a third party.

## III. DISPOSITION

The judgment is affirmed. Defendant shall recover its costs on appeal.

GETTY, J.*

WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A163809N

---

* Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.